Dr. Henry McLEMORE II, et
al., Plaintiffs,

v.

Paul J. LANDRY, et al., Defendants.

SUN BELT FEDERAL BANK,
Plaintiffs–Appellees,

v.

RIVER VILLA PARTNERSHIP, et al.,
Defendants–Appellants.

No. 89–3011.

United States Court of Appeals,
Fifth Circuit.

April 6, 1990.

Thomas H. Benton, and Richmond C. Odom, Baton Rouge, La., for defendants-appellants.

James D. McMichael, Marie Breaux Stroud, Liskow & Lewis, New Orleans, La., for plaintiffs-appellees.

Shelby McKenzie, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for FSC Securities Corp.

Richard A. Curry, Shannan S. Rieger, Rubin, Curry, Colvin & Joseph, Baton Rouge, La., for plaintiffs-appellees.

Before CLARK, Chief Judge, and POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

River Villa Partnership appeals an adverse summary judgment recognizing the rights of the Federal Savings and Loan Insurance Corporation (FSLIC) under promissory notes and a collateral mortgage executed by Paul J. Landry as attorney-in-fact for the partnership. We affirm.

### Background

This appeal arises out of an action originally filed by Sun Belt Federal Bank, F.S.B. (Sun Belt) against River Villa and its several partners, jointly and solidarily, to recover on a $1,585,000 promissory note and collateral mortgage executed by Landry. River Villa has 15 partners: Interplan Development, Inc., a Louisiana corporation of which Landry is president, and Drs. Henry McLemore, Thomas Jenkins, Leon Lastrapes III, Gerald Murdock, Francis Elias, Robert Lyons, Charles Smith, Lawrence Tujague, William O'Neill, David Wallin, Patrick Breaux, William Harkrider, Lawrence Broussard, and Gerald Schiff.

The dispositive facts are relatively uncontroverted, although their legal effect is sharply disputed. Landry secured powers of attorney from all but three of River Villa's partners.[1] The powers authorized Landry to exchange properties owned by River Villa on the False River, near Baton Rouge, for properties owned by third persons in Gonzales, Louisiana. In connection with the exchange the powers authorized Landry to borrow $1,550,000 from Sun Belt "at such rates of interest and on such terms and conditions as he deems fit and proper in his sole discretion" and to secure the loan with a mortgage on the Gonzales properties.[2]

On December 10, 1984, acting as agent and attorney-in-fact for River Villa and its partners, Landry executed instruments effecting the property exchange and a loan of $1,585,000 from Sun Belt to River Villa. The Sun Belt loan was secured by: (1) a demand collateral mortgage note for $1,900,000; (2) a collateral mortgage on the Gonzales properties; (3) a pledge agreement delivering to Sun Belt the collateral mortgage note as security for all of its loans to River Villa; and (4) an assignment to Sun Belt of the rentals from tenants of the Gonzales properties.

River Villa defaulted on the loan payments due May 1, 1985 and thereafter. Sun Belt accelerated the due date of the

---

1. Elias, Breaux, and Wallin did not sign powers of attorney for Landry.

2. The 11 identical powers of attorney each authorized Landry:

> To borrow from Sun Belt Federal Bank, F.S.B. the sum of ONE MILLION FIVE HUNDRED FIFTY THOUSAND AND NO/100 ($1,550,000.00) DOLLARS, at such rates of interest and on such terms and conditions as he deems fit and proper in his sole discretion,

> and to secure that loan by mortgage on the property described on Exhibit "B" [the Gonzales properties] containing all of the usual and customary provisions for Louisiana mortgages.

In addition, Landry was thereafter authorized "to do all acts necessary and proper to accomplish any and all of the duties hereabove specified."

loan balance and filed suit against River Villa and its partners on the promissory note and collateral mortgage.

After an amended complaint and two third-party complaints not relevant to this appeal were filed,[3] Sun Belt was placed in receivership and FSLIC removed the case to federal court. Cross-motions for summary judgment were filed. The district court granted summary judgment for FSLIC, holding River Villa and its individual partners liable, in solido, on the promissory note and recognizing the collateral mortgage.[4] *McLemore v. Landry*, 687 F.Supp. 1038 (M.D.La.1988).[5] While post-judgment motions from both River Villa and the FSLIC were pending River Villa moved to file a compulsory counterclaim which the district court denied as untimely. Following the trial court's denial of both River Villa and FSLIC's motions to amend the judgment, and River Villa's motion for a stay of execution, River Villa and the "respective individual partners therein," moved the district court to "enter an order of appeal."

*Analysis*

A. Jurisdiction

■ As a threshold consideration we must determine whether we have jurisdiction of this appeal and, if we do, over which parties. Although an administrative panel of this court previously denied a motion by FSLIC to dismiss this appeal for lack of jurisdiction, we are compelled to revisit the issue, *E.E.O.C. v. Neches Butane Products Co.*, 704 F.2d 144 (5th Cir.1983), for ours is a court of limited jurisdiction. *Thompson v. Betts*, 754 F.2d 1243 (5th Cir.1985).

The "notice of appeal" before us reads in its entirety:

NOW INTO COURT, comes River Villa, A Partnership, and the respective individual partners therein, defendants in the above-captioned action entitled Sun Belt Federal Bank, F.S.B. v. River Villa Partnership, et al., and moves this Court to allow an appeal and enter an order of appeal in the said action.

Thus drafted, this fails to comply with the requirements of Rule 3(c) of the Federal Rules of Appellate Procedure, which mandates that a notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken."

■ As to the latter two requirements of Rule 3(c), we deem the instant notice of appeal sufficient, although inartfully drawn. River Villa's intent to appeal the underlying summary judgment and denial of its motion to file a compulsory counterclaim may be gleaned from its "timing" and the status of the case when the "notice" was filed, as subsequently buttressed by the statement of issues and briefs. *See F.T.C. v. Hughes*, 891 F.2d 589, 590 n. 1 (5th Cir.1990); *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962). Further, River Villa's intent to appeal to this court is made manifest by the fact that this is the only court to which an appeal may be had.

■ Despite reaffirming the rubric that courts of appeal should liberally construe Rule 3(c) in favor of appeals, the Supreme Court recently underscored the necessity of an unqualified designation of the party or parties taking the appeal. In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the

---

3. River Villa and its partners filed a third-party complaint against Landry and Interplan Development. Sun Belt filed an amended complaint adding as defendants Sidney Fazio, Sun Belt's chief counsel who served as closing attorney and notary on the mortgage loan transaction, his law firm, and the firm's malpractice insurer, in the event River Villa and partners successfully asserted the affirmative defense that the transaction had been invalid. River Villa and its partners later filed third-party complaints against Financial Service Corporation Securities, for whom they alleged Landry had been

working as a registered representative at the time of the property exchange and mortgage loan transaction, and Interplan Development, Inc.

4. The district court held the three River Villa partners who had not signed powers of attorney liable only for their virile shares.

5. The district court entered its judgment pursuant to Fed.R.Civ.P. 54(b).

Court held that the failure to name a party in a notice of appeal was not a mere technical variance but, rather, constituted a jurisdictional defect. The Court held that the designation "et al." did not suffice to satisfy this requirement. Applying this principle to the instant case we must conclude that the notice of appeal by "River Villa, A Partnership, and the respective individual partners therein," confers jurisdiction solely over the appeal of the partnership, the only named appellant, and leaves this court without jurisdiction as to the appeal of the several partners.[6]

**B. River Villa's Defenses to Enforcement of the Note**

River Villa raises two defenses to FSLIC's efforts to enforce the $1,585,000 promissory note that Landry executed for the partnership. We consider each in light of the holding of the Supreme Court in *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In *D'Oench*, the Supreme Court held that oral side agreements cannot defeat recovery by the Federal Deposit Insurance Corporation. Adopted to protect the FDIC "against misrepresentation as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans," 315 U.S. at 457, 62 S.Ct. at 679, the *D'Oench* doctrine has since been codified:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3)

shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e). As a common law doctrine *D'Oench* has been extended to protect FSLIC as well as the FDIC. *See Fed. Sav. & Loan Ins. Corp. v. Lafayette Invest. Properties, Inc.*, 855 F.2d 196 (5th Cir.1988); *Fed. Sav. & Loan Ins. Corp. v. Murray*, 853 F.2d 1251 (5th Cir.1988).

1. *Validity of the powers of attorney.*

■ We must first determine whether the statute and the *D'Oench* doctrine bar our consideration of the mandates.[7] We conclude that they pass muster for they specifically are referred to in the collateral mortgage, and Landry signed both notes in his representative capacity, thus satisfying *D'Oench* concerns. *See Templin v. Weisgram*, 867 F.2d 240 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989). Accordingly, we address the merits of River Villa's challenge to the validity of the powers of attorney.

■ River Villa vigorously asserts that it incurred no obligation to Sun Belt on the $1,585,000 promissory note, and its accompanying collateral mortgage, because the completed transaction bore no resemblance to the program contemplated by the individual partners when they signed the mandate authorizing Landry to act on their behalf. In attempting to invalidate its obligation, however, River Villa throws a wide loop, capturing a diverse cast of characters and circumstances well beyond those relevant to the issue at bar. It first contends that Landry incurred a debt for the partnership of over $3,000,000, nearly double the loan authorization in the powers of attorney. It arrives at this sum by adding

---

**6.** This case demonstrates the problem inherent in assuming that a generic designation, without more, automatically covers all persons ostensibly aligned on one side of litigation. River Villa is composed of 15 partners. Interplan Development, Inc., of which Landry is president, is one. As noted, it was named as a third-party defen-

dant by River Villa. Its interests obviously are not consistent with the interests of the other partners.

**7.** In Civil Law terminology, powers of attorney are known as mandates. La.Civil Code art. 2985.

to the $1,585,000 note given to Sun Belt a total of $1,432,000 in first mortgages held by others on some of the properties received by River Villa in the exchange.[8] That some of the properties received in the exchange were burdened with mortgages might be relevant to the validity of the exchange, but such does not affect the validity of the $1,585,000 promissory note Landry gave Sun Belt on behalf of River Villa to evidence its loan.

■ The relevant inquiry relates to the River Villa/Sun Belt transaction. Focusing on that we address River Villa's challenge to the transaction's essential validity because the $1,585,000 note exceeded by $35,000 the maximum authorized in the mandate. Is this variance of just over two percent *de minimus?* Was it subsequently ratified by the partnership as provided by La.Civil Code art. 3010? We pretermit the former and accept the finding and/or conclusion by the district court that the additional $35,000 was ratified when the partnership made payments on the note without protest or reservation. To the extent that this was a finding of fact by the district court it is protected by the clearly erroneous shield of Fed.R.Civ.P. 52(a). To the extent it was a conclusion of law, we perceive no reason to vary from the rule that "we customarily defer to the district judge in a diversity case involving interpretation of the law of the state in which the judge sits." *USX v. Tanenbaum,* 868 F.2d 1455, 1457 (5th Cir.1989).[9]

■ River Villa next asserts that Landry exceeded his authority by binding the partners jointly and solidarily on the promissory note despite the absence of specific authorizing language in the powers of attorney. River Villa correctly observes that the obligation of solidary liability may not be presumed but must be expressly undertaken. La.Civ.Code art. 1796. The solidary obligations undertaken on behalf of all parties-signatory in the Sun Belt promissory note is indeed express. River Villa contends, however, that the language of the mandate must be equally express. Civil Code article 2996 provides that "[i]f it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express." Article 2997 continues by listing the specific acts for which the granted power must be express, including, *inter alia,* the authority:

To sell or buy.

To incumber or hypothecate.

.    .    .    .    .

To contract a loan or acknowledge a debt.

To draw or indorse bills of exchange or promissory notes.

.    .    .    .    .

This listing is exclusive. *See Hawthorne v. Kinder Corp.,* 513 So.2d 509 (La.App.1987).

■ The power of attorney specifically authorized Landry to borrow $1,550,000 from Sun Belt "on such terms and conditions as he deems fit and proper in his sole discretion, and to secure that loan by mortgage on [the Gonzales properties]." We hold that the execution of the promissory note and collateral mortgage was consist-

---

8. In an effort to enhance its argument that Landry incurred an obligation far greater than that authorized, River Villa decries Landry's execution of the $1,900,000 "collateral mortgage note" on its behalf. Unlike the $1,585,000 promissory note, this note does not reflect River Villa's debt to Sun Belt. Rather, it creates a fictitious debt that can be secured by a collateral mortgage which is then pledged as security for a real debt. This "straw" transaction is a Louisiana security device commonly used by lenders to obtain a secured position on property to protect both past and future loans to the debtor. *See Texas Bank of Beaumont v. Bozorg,* 457 So.2d 667 (La.1984).

9. River Villa raises two other arguments regarding the property exchange in an effort to invalidate its promissory note obligation. First, River Villa argues that it acquired only 75 units rather than 95 as Landry had promised. River Villa then complains that on 40 of the 75 units acquired Sun Belt took a second, rather than a first mortgage. Neither the powers of attorney nor the promissory note refer to the number of units to be exchanged or to whether Sun Belt's mortgage would be a first or second mortgage. The collateral mortgage did, however, list the partnership property subject thereto. We reject again River Villa's efforts to invalidate its obligation on the Sun Belt promissory note by reference to the property exchange.

ent with the powers of attorney and Louisiana law.

■ River Villa's final challenge based on the disbursement of the loan proceeds is barred by the *D'Oench* doctrine. The mandates do not address disbursement. River Villa therefore may not urge disbursement as a defense to the claim by FSLIC.

### 2. *Allegations of fraud.*

■ As its second line of defense River Villa alleges fraud on the part of Landry, Sidney Fazio, and A. Larry Tullos, Sun Belt's former president. River Villa alleges that Landry fraudulently misrepresented the number of properties that it would receive in the property exchange in order to induce the partners to execute the powers of attorney. River Villa's allegations that it was defrauded by Fazio and Tullos are extrapolated from the fact that the two were convicted, and Fazio was sued by FSLIC, as a consequence of an unrelated transaction involving different companies, for making false entries to conceal violations of the loan-to-one-borrower rule. The district court found that River Villa had presented no summary judgment evidence of fraud to preclude a ruling in favor of FSLIC. River Villa argues that its allegations presented a genuine issue of material fact that should have vitiated summary judgment, at least until further discovery could be had.[10]

Any issue of fact arising out of River Villa's allegations of fraud is rendered nugatory by the *D'Oench* doctrine as expanded in *Langley v. Fed. Deposit Ins. Corp.,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).[11] In *Langley,* the Supreme Court, interpreting 12 U.S.C. § 1823(e), held that misrepresentations therein constituted con-

ditions to payment of a note and were precluded by the concerns underlying *D'Oench* and its codification from being asserted against the FDIC as a defense to its recovery on a debt. Following *Langley,* we have held that misrepresentations to borrowers cannot be asserted as a defense to recovery by FSLIC on facially unqualified loan documents. *See Murray,* 853 F.2d at 1255; *Fed. Sav. & Loan Ins. Corp. v. Lafayette Invest. Properties,* 855 F.2d at 198.

■ River Villa argues, nonetheless, that its partners were victims of fraud in the factum, which, it contends, *Langley* recognized as an exception to the *D'Oench* doctrine. This argument is misdirected, both legally and factually. *Langley* concerned misrepresentations that amounted to fraud in the inducement. We previously have declined to read dictum therein as creating an exception to *D'Oench* for allegations of fraud in the factum. *See Templin,* 867 F.2d at 242. Were we to assume the existence of such an exception, however, the fraudulent acts alleged by River Villa would not be fraud in the factum; they would constitute fraud in the inducement. Fraud in the factum occurs when a party signs a document "without full knowledge of the 'character or essential terms' of the instrument." *Templin,* 867 F.2d at 242 (citation omitted).[12] River Villa does not allege, nor could it, that its partners did not know that they were signing powers of attorney in favor of Landry. Rather, it maintains that Landry lied to the partners to *induce* them to sign what they admittedly knew to be powers according Landry broad discretion. Such clearly falls within the scope of *Langley.*

---

**10.** River Villa asserts that it attempted to depose Fazio and Tullos after their convictions, but that both invoked the fifth amendment.

**11.** River Villa's argument that *D'Oench* and *Langley,* as applied to the FSLIC, were effectively overruled by the Supreme Court's decision in *Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.,* —— U.S. ——, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), is without merit. *Coit* did not address the application of the *D'Oench* doctrine.

**12.** As illustrated in Official Comment 7 to 3–305 of the Uniform Commercial Code, fraud in the factum arises in a situation such as

that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all.

C. River Villa's Motion to File a Compulsory Counterclaim

 Finally, River Villa contends that the district court erred in refusing to grant its motion for leave to file a compulsory counterclaim alleging misrepresentation in connection with the property exchange and loan transaction. The district court denied the motion as untimely. We cannot conclude that the district court abused its discretion in so ruling. River Villa offered this motion six months after moving for summary judgment, five and one-half months after the FSLIC moved for summary judgment, six weeks after the court's ruling on these motions, and almost three years after Sun Belt first filed suit. The motion was untimely filed. *See* Fed.R. Civ.P. 13(f); *Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287 (5th Cir.1976).

The judgment of the district court is in all respects AFFIRMED.