901 F.2d 1244
 12 UCC Rep.Serv.2d 138
 CAMPBELL LEASING, INC., Eagle Airlines, Inc. and G.A. Day,
Plaintiffs-Counter-Defendants-Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver of First
RepublicBank Brownwood, National Association, and
NCNB Texas National Bank,
Defendants-Counter-Plaintiffs-Appellees.
 No. 89-1542.
 United States Court of Appeals,
Fifth Circuit.
 May 24, 1990.
 
 John E. Collins, Dallas, Tex., for plaintiffs-counter-defendants-appellants.
 Bert V. Massey, II, Massey & Shaw, Brownwood, Tex., for defendants-counter-plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before CLARK, Chief Judge, WISDOM and SMITH, Circuit Judges.
 CLARK, Chief Judge:
 
 I.
 
 1
 Appellants Campbell Leasing, Inc., Eagle Airlines, Inc., and George A. Day challenge the district court's entry of summary judgment on a promissory note in favor of the Federal Deposit Insurance Corporation (FDIC) and NCNB Texas National Bank (NCNB). We affirm in part, vacate in part, and remand for further proceedings.II.
 
 
 2
 On February 16, 1984, Campbell Leasing, Inc. (Campbell Leasing) executed a promissory note in the amount of $136,804.24, plus interest, payable to RepublicBank Brownwood (RepublicBank). To secure payment of the note, Campbell Leasing granted RepublicBank a security interest in a 1979 Piper airplane. RepublicBank also obtained the personal guarantee of George A. Day (Day).
 
 
 3
 In May of 1986, Campbell Leasing defaulted on the note. RepublicBank accelerated the maturity of the note after Campbell Leasing failed to cure its default. On June 12, 1986, RepublicBank seized the airplane but did not gain possession of its maintenance records or flight logs. The seizure prompted appellants to file this lawsuit. RepublicBank counterclaimed for payment of the note, plus interest, costs, and attorneys' fees.
 
 
 4
 On July 29, 1988, the successor to RepublicBank, First RepublicBank Brownwood, N.A. (First RepublicBank), was declared insolvent and closed. The Comptroller of Currency appointed the FDIC as receiver. The FDIC entered into a purchase and assumption agreement with a federally established bridge bank, which purchased the promissory note, security agreement, and guarantee at issue in this case. The bridge bank became NCNB Texas National Bank.
 
 
 5
 In August of 1988, the FDIC and NCNB removed the case to federal court and filed a motion for summary judgment. The district court subsequently permitted the parties to amend their pleadings. In their amended complaint, the appellants asserted: (1) that prior to seizing the airplane RepublicBank had agreed to a novation wherein Tex-Star Airlines, Inc. (Tex-Star) executed a note to RepublicBank for the purchase of the plane, thereby relieving Campbell Leasing and Day of their obligations under the Campbell Leasing note; (2) that RepublicBank was guilty of trespass and conversion in connection with the seizure of the airplane; (3) that after seizing the plane, RepublicBank failed to deal with the appellants fairly and in good faith and tortiously interfered with their attempts to lease the plane to a third party; (4) that RepublicBank failed to maintain the plane and dispose of it in a commercially reasonable manner; (5) that RepublicBank had elected to retain the plane in satisfaction of Campbell Leasing's debt, and (6) that RepublicBank had caused Day to suffer mental and emotional distress.
 
 
 6
 The district court granted summary judgment for NCNB and the FDIC, concluding that all of the appellants' claims and affirmative defenses were barred by the federal common-law doctrine announced in D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and the holder in due course doctrine announced in Federal Deposit Insurance Corporation v. Wood, 758 F.2d 156 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). The court entered judgment against Campbell Leasing and Day jointly and severally for the amount due on the note, plus interest, and awarded the FDIC and NCNB costs and attorneys' fees. The court also foreclosed the lien on the plane and its attachments and directed the appellants to deliver the maintenance records and log books to the FDIC and NCNB. Finally, the court ordered the airplane sold and the amount of the judgment reduced by the proceeds.
 
 
 7
 The appellants now challenge the district court's entry of summary judgment. At oral argument, the appellants waived all but the following contentions: (1) the D'Oench, Duhme doctrine is unconstitutional; (2) the federal holder in due course doctrine does not bar their claims against RepublicBank, and if it does bar those claims it is unconstitutional; and (3) the FDIC and NCNB have not acted in a commercially reasonable manner regarding the maintenance and sale of the airplane. We affirm in part, vacate in part, and remand.
 
 III.
 
 8
 A. The D'Oench, Duhme Doctrine.
 
 
 9
 The appellants concede that the D'Oench, Duhme doctrine bars their claim that the promissory note was extinguished in a transaction involving Tex-Star, because the transaction was not documented in RepublicBank's records. They argue instead that the D'Oench, Duhme doctrine violates their rights under the fifth amendment by depriving them of valuable property--their defense to liability on the note--without just compensation or due process of law. We disagree.
 
 
 10
 The D'Oench, Duhme doctrine is "a common law rule of estoppel precluding a borrower from asserting against the FDIC defenses based upon secret or unrecorded 'side agreements' that alter[ ] the terms of facially unqualified obligations." Bell & Murphy & Assoc. v. Interfirst Bank Gateway, N.A., 894 F.2d 750, 753 (5th Cir.1990). Even borrowers who are innocent of any intent to mislead banking authorities are covered by the doctrine if they lend themselves to an arrangement which is likely to do so. Id. at 753-54. The doctrine thus "favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." Id. at 754.
 
 
 11
 In this case, the appellants were in a position to protect themselves by ensuring that the alleged Tex-Star transaction was adequately documented in RepublicBank's records. They failed to do so. Because the absence of documentation was likely to mislead banking authorities as to the value of the Campbell Leasing note, the appellants are estopped from asserting against the FDIC and NCNB any claims relating to the Tex-Star transaction. Id.
 
 
 12
 The D'Oench, Duhme doctrine does not deprive the appellants of property without just compensation. The appellants have simply deprived themselves of certain defenses to liability by failing to protect themselves in the manner required by the D'Oench, Duhme doctrine. See United States v. Locke, 471 U.S. 84, 107-08, 105 S.Ct. 1785, 1799, 85 L.Ed.2d 64 (1985) (upholding a federal provision extinguishing mineral interests for failure to make a timely annual filing). The government has never been required "to compensate [property owners] for the consequences of [their] own neglect." Texaco, Inc. v. Short, 454 U.S. 516, 530, 102 S.Ct. 781, 792, 70 L.Ed.2d 738 (1982).
 
 
 13
 Nor have the appellants been denied due process. The D'Oench, Duhme doctrine is a federal common law rule of general applicability that was established long before the appellants' claims arose. Because the appellants had "a reasonable opportunity both to familiarize themselves with [its] general requirements and to comply with those requirements," due process has been satisfied. Locke, 471 U.S. at 108, 105 S.Ct. at 1799. We conclude that the D'Oench, Duhme doctrine does not violate the takings clause or the due process clause of the fifth amendment.
 
 
 14
 B. The Federal Holder In Due Course Doctrine.
 
 
 15
 The federal holder in due course doctrine bars the makers of promissory notes from asserting various "personal" defenses against the FDIC in connection with purchase and assumption transactions involving insolvent banks. Wood, 758 F.2d at 161; see also FSLIC v. Murray, 853 F.2d 1251, 1256 (5th Cir.1988). The protection extends to subsequent holders of the notes. See id.
 
 
 16
 This doctrine is grounded in the federal policy of "bringing to depositors sound, effective, and uninterrupted operation of the [nation's] banking system with resulting safety and liquidity of bank deposits." S.REP. NO. 1269, 81st Cong., 2d Sess., reprinted in 1950 U.S.CODE CONG. & ADMIN.NEWS 3765, 3765-66. The most effective way for the FDIC to implement this policy when a bank becomes insolvent is by arranging a purchase and assumption transaction rather than by liquidating the bank. Wood, 758 F.2d at 160-61; see also Murray, 853 F.2d at 1256-57. If the FDIC were required to determine the value of the bank's notes in light of all possible "personal" defenses, a purchase and assumption transaction could not take place in the timely fashion necessary to ensure "uninterrupted operation" of the bank and the "safety and liquidity of deposits." Thus, the FDIC as a matter of federal common law enjoys holder in due course status in order to effectively perform its congressionally mandated function.
 
 
 17
 In this case, the appellants assert various defenses and counterclaims to liability on the note. They contend that RepublicBank tortiously interfered with their efforts to lease the Piper airplane to a third party and delayed too long after the plane's seizure before attempting to sell it. They maintain that the note could have been completely discharged absent RepublicBank's wrongful actions. They also claim that RepublicBank elected to keep the airplane in full satisfaction of the note and caused Day to suffer mental and emotional distress. Because these are "personal" rather than "real" defenses to liability on the note, see TEX.BUS. & COM.CODE Sec. 3.305, the FDIC and NCNB as holders in due course acquired the note free of these claims. See Murray, 853 F.2d at 1256; Wood, 758 F.2d at 160.
 
 
 18
 The appellants challenge this conclusion, contending that the federal holder in due course doctrine does not apply to this case because the FDIC was not acting in its corporate capacity. See Wood, 758 F.2d at 161. They also argue that the FDIC and NCNB do not qualify as holders in due course under Texas law because they acquired the note in a bulk transaction by legal process and had notice that the note was overdue. See TEX. BUS. & COM. CODE Sec. 3.302. We reject these contentions.
 
 
 19
 We find no logical reason to limit federal holder in due course protection to the FDIC in its corporate capacity, to the exclusion of its receivership function. In its corporate capacity, the FDIC is obligated to protect the depositors of a failed bank, while the FDIC as receiver must also protect the bank's creditors and shareholders. Gilman v. FDIC, 660 F.2d 688, 690 (6th Cir.1981); see generally 12 U.S.C. Sec. 1821. In both cases, the holder in due course doctrine enables the FDIC to efficiently and effectively fulfill its role, thus minimizing the harm to depositors, creditors, and shareholders. See Wood, 758 F.2d at 160-61; Murray, 853 F.2d at 1256. For example, the doctrine prevents note makers from gaining absolute priority over a failed bank's assets, by asserting "personal" claims as defenses or setoff to their notes, to the detriment of the bank's other creditors and potentially its depositors. Wood, 758 F.2d at 160-61; see also Murray, 853 F.2d at 1256-57. We conclude that the FDIC enjoys holder in due course status as a matter of federal common law whether it is acting in its corporate or its receivership capacity. See Wood, 758 F.2d at 160.
 
 
 20
 In addition, the FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law. The court in Wood assumed that the FDIC did not qualify as a holder in due course under state law, yet it still held that the FDIC was entitled to the protections of a holder in due course as a matter of federal common law. See 758 F.2d at 158. We reached the same conclusion with respect to the FSLIC. Murray, 853 F.2d at 1256. This rule "promotes the necessary uniformity of law in this area while it counters individual state laws that would frustrate [basic FDIC objectives]." Id.
 
 
 21
 However, the district court erred in granting summary judgment against the appellants on all their claims. The appellants have a statutory right to continue their action against the FDIC as receiver for First RepublicBank on their claims of tortious interference with contract, breach of the Campbell Leasing security agreement, and intentional infliction of mental and emotional distress. 12 U.S.C. Sec. 1821(d)(6)(A). While the holder in due course doctrine prevents the appellants from asserting these claims as a set-off to liability on the note, it does not prevent the appellants from trying these claims to the district court, liquidating the amount of damages, and subsequently receiving a pro-rata share of First RepublicBank's remaining assets along with the bank's other creditors. See id. Sec. 1821(d)(11)(A)(ii). We therefore must vacate that part of the district court's judgment dismissing the appellants' breach of contract and tort claims and remand for additional proceedings.
 
 
 22
 In light of these statutory provisions, we reject the appellants' further contention that application of the holder in due course doctrine violates due process or amounts to an unconstitutional taking of property without just compensation.
 
 
 23
 A negotiable instrument is subject to transfer at any time, and the maker must always be aware that the transferee may be a holder in due course. From the maker's view, there is no difference between his bank failing and the note going to the ... FDIC, and his bank failing after selling the note to a holder in due course.
 
 
 24
 Wood, 758 F.2d at 161. The appellants have not been denied the opportunity to assert their claims because they may pursue them against the FDIC as receiver for First RepublicBank. The appellants have "therefore suffer[ed] no prejudice." Murray, 853 F.2d 1256-57; see also Chatham Ventures, Inc. v. FDIC, 651 F.2d 355, 362-63 (5th Cir.1981), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); Hardy v. Gissendaner, 508 F.2d 1207, 1209 (5th Cir.1975).
 
 
 25
 C. The Actions of the FDIC and NCNB.
 
 
 26
 Appellants' final contention is that the FDIC and NCNB have not acted in a commercially reasonable manner with respect to the aircraft. They claim that the FDIC and NCNB allowed the airplane to be damaged and that efforts to sell it delayed too long. Appellants argue alternatively that there are genuine issues of material fact with respect to the commercial reasonableness of the FDIC's and NCNB's actions. We reject these contentions.
 
 
 27
 The summary judgment proof amply demonstrates that the FDIC and NCNB have acted in a commercially reasonable manner with respect to the aircraft. Nothing in the Texas Uniform Commercial Code establishes a set time limit for disposing of repossessed collateral, except for consumer goods. See TEX.BUS. & COMM.CODE Sec. 9.506, official comments. The FDIC and NCNB have reasonably waited to sell the airplane until the appellants come forward with the maintenance records and flight logs. These records are essential in order to obtain the highest and best price for the aircraft. The appellants have also contributed to prolonging the process by keeping the FDIC and NCNB in continuous litigation on this matter. We reject as disingenuous appellants' suggestion at oral argument that they at all times desired that the FDIC and NCNB sell the airplane. Finally, the appellants produced no evidence to support their allegation that the FDIC and NCNB have allowed the airplane to deteriorate or to be damaged. The district court properly granted summary judgment in favor of the FDIC and NCNB on this issue.
 
 IV.
 
 28
 We vacate that part of the district court's judgment dismissing the appellants' claims against the FDIC as receiver for First RepublicBank for tortious interference with contract, breach of the security agreement, and infliction of emotional distress, and we remand for further proceedings consistent with this opinion. We affirm the judgment in all other respects.
 
 
 29
 AFFIRMED in part, VACATED in part, and REMANDED.