FEDERAL DEPOSIT INSURANCE CORPORATION, As Manager of the FSLIC Resolution Fund, As Successor to the FSLIC, and As Receiver for Home Savings and Loan Association of Lufkin, Texas, Plaintiff,

v.

TEXAS COUNTRY LIVING, INC., Ted R. Burkhart, Kenneth Barner, Texas Country Living Partnership and C.C. Armstrong, Defendants.

BLUEBONNET SAVINGS BANK, FSB f/k/a Consolidated Federal Savings Bank, FSB, Intervenor,

v.

TEXAS COUNTRY LIVING, INC., Ted R. Burkhart, Kenneth Barner, Texas Country Living Partnership, and C.C. Armstrong, Intervention Defendants.

No. 9:89 CV 16.

United States District Court,
E.D. Texas,
Lufkin Division.

Dec. 17, 1990.

American Arbitration Ass'n, Kip Gibson, Dallas, Tex., pro se.

Michael A. Barragan, Gardere & Wynne, Dallas, Tex., for FSLIC, receiver and Federal Deposit Ins. Corp., as manager-receiver for FSLIC Resolution Fund for Home Sav. & Loan Ass'n, receiver.

Donald Wayne Cothern, Ramey Flock Jeffus Crawford Harper & Collins, P.C., Tyler, Tex. and Wayne William Bost, Winstead Sechrest & Minick P.C., Dallas, Tex., for Home Sav. and Loan Ass'n, plaintiff and Consol. Federal, intervenor-plaintiff.

Charles David Porter, Porter & Duran, Lufkin, Tex., for Ted R. Burkhart, Kenneth Barner and Texas Country Living, defendants.

Robert Quentin Keith, Keith & Keith; Mehaffy, Weber, Keith & Gonsoulin, Johnson City, Tex., for C.C. Armstrong and

Texas Country Living Partnership, defendants.

## MEMORANDUM OPINION

JUSTICE, District Judge.

Bluebonnet Savings Bank, FSB, the successor of the failed Home Savings and Loan Association of Lufkin, Texas, seeks summary judgment to enforce payment of the principal and interest owing on a promissory note in the amount of $2,100,000, to enforce payment of a guaranty of the note, and to foreclose on the security for the note, represented by a deed of trust on a motel located in Kendall County, Texas. Defendant Texas Country Living Incorporated (hereinafter referred to as "the corporation") signed the promissory note and the deed of trust through its president, W. Grady Fort, II. Fort and defendants Ted R. Burkhart and Kenneth Barner signed a guaranty agreement, thereby personally guaranteeing payment of the note.

Defendants C.C. Armstrong and the Texas Country Living Partnership (hereinafter referred to as "the partnership"), the partners of which are Armstrong and the corporation, did not sign the promissory note, deed of trust, or guaranty. However, based on an agreement between the partners and a loan modification agreement executed by Home Savings and Loan Association (hereinafter referred to as "HSA") and the partners, Bluebonnet contends that Armstrong and the partnership are liable for payment of the promissory note. While Bluebonnet has moved that summary judgment be entered finding Armstrong and the partnership liable for the note, Armstrong and the partnership move that summary judgment be entered in their favor, finding that they have no obligation to Bluebonnet.

Burkhart, Armstrong, and the partnership asserted counterclaims against HSA. Upon the motion of Armstrong and the partnership, their counterclaims were dismissed without prejudice, leaving only Burkhart's counterclaims against HSA. FDIC–Receiver, which has inherited the liabilities of HSA, demands summary judgment in its favor with regard to Burkhart's counterclaims.

### I. Standard for Granting Summary Judgment

Rule 56 provides that the grant of summary judgment is proper if the record as a whole "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. It is well established that "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

### II. Bluebonnet's Motion for Summary Judgment with Respect to the Promissory Note, Deed of Trust, and Guaranty

As noted above, Bluebonnet is the successor of a failed savings and loan institution. On December 22, 1988, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Association ("FSLIC") as Receiver for HSA. On the same day, FSLIC, as Receiver for HSA, executed a transfer and assignment agreement, by which FSLIC transferred to Consolidated Federal Savings Bank the assets of HSA, including the promissory note and related guaranty, deed of trust, and loan modification agreement which form the basis of this action. Thus, Consolidated Federal Savings Bank became the holder of the note and accompanying documents. Consolidated Federal Savings Bank subsequently changed its name to Bluebonnet Savings Bank.

Bluebonnet has established, and defendants do not dispute, that the promissory note, deed of trust, and guaranty are, on their face, valid. Nor do the defendants dispute that they are in default of their obligations under those documents. In-

stead, Burkhart and the corporation have raised affirmative defenses to their obligations under the note and the guaranty, contending that HSA acted fraudulently in inducing the borrowers to enter into the loan transaction and subsequently breached its duty of good faith to the borrowers. Burkhart alleges that when he and the other members of the corporation approached HSA regarding a loan to purchase land and erect a motel in Boerne, Texas, they informed the bank that they knew nothing about the business of operating a motel. According to Burkhart, the corporation agreed to borrow money for the project only because agents of HSA assured the members of the corporation that the location was ideal for a motel and the enterprise was certain to succeed. Burkhart also alleges that before construction of the motel was complete, the corporation received an offer from a qualified third party to purchase the motel at a $100,000 net profit to the borrowers, but that HSA, who under the terms of the loan had a 25% interest in the motel's operating profits and also had the right to approve any purchaser of the project, rejected the offer. Additionally, Burkhart alleges that HSA made various other promises and misrepresentations in the course of the transaction.

Whether the facts Burkhart alleges, if proven, could operate to bar enforcement of the promissory note, deed of trust, and guaranty are governed under federal law by the *D'Oench, Duhme* doctrine. The doctrine, as originally stated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), holds that when a federally insured bank fails, borrowers from the bank may not later defend against collection efforts of a federal Receiver by arguing that they had an unrecorded agreement with the bank. *See* 315 U.S. at 459–60. The doctrine has been expanded to defeat nearly every defense to payment of an obligation that is not based on a written document on file with the lending institution. With respect to institutions insured by the Federal Deposit Insurance Corporation (the "FDIC"), the *D'Oench, Duhme* doctrine is codified by 12 U.S.C. § 1823(e). In 1989, Congress placed the Federal Savings and Loan Insurance Corporation under the control of the FDIC, thus making § 1823(e) applicable to failed savings and loan associations that are taken over by a federal Receiver. *See* Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L.No. 101–73, 103 Stat. 183 (1989) ("FIRREA"). Whether the present action is governed by § 1823(e) or the common law *D'Oench, Duhme* doctrine is not determinative, as courts have treated the two as essentially interchangeable. *See Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 n. 4 (5th Cir.1990), *petition for cert. filed* (October 24, 1990); *Beighly v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989). Similarly, "[a]s a common law doctrine *D'Oench* has been extended to protect FSLIC as well as the FDIC," *McLemore v. Landry*, 898 F.2d 996, 1000 (5th Cir.), *cert. denied sub nom. River Villa Partnership v. Sun Belt Fed. Bank, F.S.B.,* —— U.S. ——, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990), and decisions in cases involving the FDIC are treated as precedent in actions involving FSLIC. *See id.*, 898 F.2d at 1002; *Federal Sav. and Loan Ins. Corp. v. Murray*, 853 F.2d 1251, 1253–54 (5th Cir.1988).

■ Before addressing the effect of *D'Oench, Duhme* in the present action, two threshold matters should be noted. First, because Bluebonnet is a successor to FSLIC as the holder of the promissory note, deed of trust, and guaranty, Bluebonnet is entitled to the protections of the *D'Oench, Duhme* doctrine. *Bell & Murphy and Assocs., Inc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Kilpatrick v. Riddle, supra*, 907 F.2d at 1528. Second, the *D'Oench, Duhme* doctrine governs the borrower's defenses to payment of their obligations, despite the fact that the defenses were raised in answer to HSA's collection action *before* FSLIC became the holder of the promissory note and accompanying documents. *Langley v. FDIC*, 484 U.S. 86, 94–96, 108 S.Ct. 396, 402–403, 98 L.Ed.2d 340 (1987); *Kilpatrick v. Riddle, supra*, 907 F.2d at 1528.

■ Having established that the *D'Oench, Duhme* doctrine applies to the affirmative defenses raised by Burkhart and the corporation against enforcement of the promissory note, deed of trust, and guaranty, disposition of those defenses is a relatively straightforward task. The defenses asserted are precisely the sort of claims that previously have been held incapable of surmounting the walls of the *D'Oench, Duhme* fortress. The borrowers in *Langley*, for example, sought to bar enforcement of promissory notes by alleging that the notes had been procured by the bank's misrepresentations that the property conveyed in the land purchase consisted of 1,628.4 acres, when in fact it consisted of only 1,522, that the property included 400 mineral acres, when it actually contained only 75, and that there were no outstanding mineral leases on the property, when there were in reality. 484 U.S. at 88–89, 108 S.Ct. at 399–400. Noting that "the essence of [the borrower's] defense against the note is that the bank made certain warranties regarding the land, the truthfulness of which was a condition to performance of their obligation to repay the loan," 484 U.S. at 90–91, 108 S.Ct. at 400–401, the Court stated:

> [O]ne who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

484 U.S. at 93, 108 S.Ct. at 402.

Because no references to the representations concerning the land appeared in the documents executed by the borrowers or in the bank's records, the *Langley* Court held that any defense to payment of the note based on the alleged misrepresentations was barred by the statutory codification of the *D'Oench, Duhme* doctrine. 484 U.S. at 90–93, 108 S.Ct. at 400–402.

In *Kilpatrick v. Riddle, supra,* the Court of Appeals for the Fifth Circuit reached the same result, rejecting the argument that a unilateral misrepresentation by the bank is not an "agreement," and thus is not barred by the *D'Oench, Duhme* doctrine. The *Kilpatrick* court stated, "[I]t is now clear that borrowers who execute facially unqualified obligations may not prevent a federal receiver's collection efforts by claiming that they were induced to execute the obligations by fraud." 907 F.2d at 1527–28.

In the light of *Langley, Kilpatrick,* and an overwhelming amount of Fifth Circuit authority that makes clear the ability of the *D'Oench, Duhme* doctrine to defeat such defenses,[1] the defenses Burkhart and the corporation raise against enforcement of the promissory note, deed of trust, and guaranty—none of which are based on written agreements in the bank's records—cannot stand. Accordingly, judgment should be entered against Texas Country Living Incorporated holding the corporation liable for payment of the promissory note and against Ted R. Burkhart and Kenneth Barner, holding each liable for payment of the guaranty. Further, judgment should be entered for plaintiff with regard to foreclosure of the deed of trust, giving Bluebonnet the right to foreclose on the underlying security for the promissory note.

### III. *Burkhart's Counterclaims against FSLIC (now FDIC) as Receiver*

■ In answer to the action in state court by HSA to enforce the promissory note, deed of trust, and guaranty, Ted R. Burkhart pleaded a number of counterclaims, including the "unconscionable action or course of action" by HSA in violation of the Texas Deceptive Trade Practices Act, negligent misrepresentations, bad faith allegations, negligence, and breach of fiduciary relationship. As relief, Burkhart seeks $500,000 in actual damages, $750,000 for mental anguish, and $2,000,000 in punitive damages. Burkhart also styled as

---

1. *See, e.g. Kilpatrick v. Riddle, supra; Beighly v. FDIC, supra; McLemore v. Landry, supra; FSLIC v. Murray, supra; Bell & Murphy and Assocs. v. Interfirst Bank Gateway, supra.*

counterclaims a claim that the loan agreement should be rescinded and that, based on promissory estoppel, HSA should be barred from enforcing the loan agreements. In light of the disposition of the affirmative defenses Burkhart and the corporation have raised against enforcement of the loan agreements, Burkhart's "counterclaims" of recision and promissory estoppel cannot be sustained, and judgment should be entered against him with regard to both defenses. Whether summary judgment should be entered against Burkhart's other counterclaims is discussed in the following paragraphs.

As noted above, HSA was closed by federal regulators in December 1988, its assets transferred to what is now Bluebonnet Savings Association, and its liabilities assumed by FSLIC as Receiver. As a result of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, FSLIC–Receiver has become FDIC–Receiver. If Burkhart were to prevail on any of his counterclaims, his recovery would not be against Bluebonnet but, instead, over against FDIC, as Receiver for HSA, and any recovery would not offset his liability to Bluebonnet. *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1249 (5th Cir.1990).

Crucial to the disposition of Burkhart's claims against FDIC–Receiver is the question whether and how the *D'Oench, Duhme* doctrine applies to those claims. In *Campbell Leasing, supra*, the Fifth Circuit held that while the federal holder in due course doctrine prevented a borrower's counterclaims (for tortious interference with contract, breach of a security agreement, and intentional infliction of emotional distress) from offsetting liability on a promissory note, the claims could be tried to the district court, with any recovery of money damages entitling the borrower, along with the bank's other creditors, to a pro-rata share of the failed financial institution's remaining assets. 901 F.2d at 1249.

Three other panels of the Fifth Circuit have held, however, that the *D'Oench, Duhme* doctrine bars such counterclaims against FDIC or FSLIC as Receiver, just as

the doctrine would defeat the claims if they were styled as affirmative defenses to enforcement of a promissory note. In *Beighley v. FDIC, supra*, a borrower made out claims against a bank for breach of contract, breach of fiduciary duty, promissory estoppel, and fraud. 868 F.2d at 778. When the bank subsequently failed, the FDIC–Receiver inherited liability for the borrower's claim. The circuit court held that the borrower's claims, which the court characterized as a claim that the bank breached an alleged oral agreement, were barred by the *D'Oench, Duhme* doctrine. 868 F.2d at 783–84.

In *Bell & Murphy, supra*, Bell & Murphy filed claims of fraudulent misrepresentation and breach of contract against a bank. The claims arose out of an agreement by which Bell & Murphy was to surrender its accounts receivable and other assets to the bank; and in return, the bank was to extend open corporate loans and to honor certain checking account overdrafts, thereby enabling Bell & Murphy to stay in business. The agreement was embodied in a letter from a bank officer to Bell & Murphy, but was not reflected in the Bank's records. 894 F.2d at 752. The trial court granted summary judgment against Bell & Murphy's claims for damages on the basis that, even if the allegations were true, the claims were barred as to the FDIC by the *D'Oench, Duhme* doctrine. *Id.*

The Fifth Circuit affirmed, noting its "recent holding in *Beighley* that the *D'Oench, Duhme* rule bars affirmative claims based upon unrecorded agreements to extend future loans." 894 F.2d at 753. On a point that is important for the present action, the court noted:

> [I]t is irrelevant to the applicability of the *D'Oench, Duhme* rule whether Bell & Murphy acted in good faith and even whether Bell & Murphy was "coerced," under "economic duress," into accepting the terms of the agreement proposed by [the bank]. Bell & Murphy could have protected itself by insisting that the bank properly record the agreement; because it did not, it is estopped from asserting

any claims arising out of the bank's alleged secret promise to make future loans.

894 F.2d at 754.

In *Kilpatrick v. Riddle, supra,* the borrowers alleged that a bank obtained the promissory notes involved in the action through a scheme to defraud investors that constituted a violation of federal security laws. The borrowers argued that the alleged violation of federal security laws barred enforcement of the notes and provided a basis for an affirmative claim against the bank. 907 F.2d at 1525. The Fifth Circuit held that the *D'Oench, Duhme* doctrine defeated both the borrowers' defense and their claims against the bank. With regard to the borrowers' claims against the bank, the court stated:

> It is further clear that if the [borrowers'] defenses are barred by the *D'Oench, Duhme* doctrine, then their defenses framed as causes of action must also be barred, because any other result would nullify the doctrine.

907 F.2d at 1528 (citing *Bell & Murphy, supra* ).

In disposing of Burkhart's counterclaims against FDIC–Receiver, a choice must be made to follow the guidance of *Campbell Leasing* or to adhere to the decisions in *Beighley, Bell & Murphy,* and *Kilpatrick.* This court is of the opinion that the latter choice is better. First, the *Campbell Leasing* court, in finding that the district court erred in granting summary judgment against a borrower's affirmative claims, held that the federal holder in due course doctrine would not defeat such claims. 901 F.2d at 1249. Although the court considered the *D'Oench, Duhme* doctrine with regard to other aspects of the case, it apparently did not address whether the doctrine would operate to bar the borrower's affirmative claims against the FDIC–Receiver.

Second, Burkhart's counterclaims are precisely the sort of claims which the *Beighley, Bell & Murphy,* and *Kilpatrick* courts reasoned should not be able to overcome the *D'Oench, Duhme* doctrine, merely because they are styled as affirmative claims rather than as defenses to the enforcement of a loan obligation. Burkhart's claims rest on his allegations that he and the corporation would not have entered into the loan transaction but for the representations by officers of HSA that the motel project was sure to succeed; that HSA wrongfully refused to approve of a third-party purchaser of the project (although HSA was merely enforcing its rights under the loan agreement); and that HSA proposed a solution to the troubled loan arrangement, but later withdrew the proposal. Each of HSA's acts of alleged wrongdoing, for which Burkhart claims a right to recover damages from FDIC–Receiver, are premised on unwritten and unrecorded representations, promises, and duties of the bank.

To permit such unwritten representations to provide a basis for recovering damages against the FDIC–Receiver would threaten the very interests the *D'Oench, Duhme* doctrine was designed to protect. As the Supreme Court noted in *Langley, supra:*

> While the borrower who has relied upon an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute. Harm to the FDIC (and those who rely upon the solvency of its fund) is not avoided by knowledge at the time of acquiring the note.... The harm to the FDIC caused by the failure to record occurs no later than the time at which it conducts its first bank examination that is unable to detect the unrecorded agreement and to prompt the invocation of available protective measures, including termination of the bank's deposit insurance.

484 U.S. at 94–95, 108 S.Ct. at 402–403 (citation omitted).

To preserve a right to recover damages, in the event (1) HSA's alleged representations concerning the motel project were untrue, (2) HSA chose to exercise its rights under the loan agreement, or (3) HSA with-

drew an oral proposal to resolve the troubled loan, Burkhart and his fellow borrowers should have had those representations and agreements committed to writing and recorded with the bank. That such unrecorded "agreements" cannot be permitted to provide a basis for avoiding obligations to or recovering damages against a failed federally-insured financial institution is the central teaching of the *D'Oench, Duhme* doctrine. Therefore, judgment should be entered in favor of FDIC–Receiver with regard to Burkhart's claims against it arising out of HSA's alleged misconduct.

■ FDIC–Receiver, in demanding summary judgment against Burkhart's claims, did not argue that it was entitled to judgment on the basis of the *D'Oench, Duhme* doctrine. Instead, it argued only that summary judgment should be granted on the ground that, because FDIC as Receiver for the liabilities of HSA has no assets with which to satisfy any judgment that might be entered against it, Burkhart's claims against it were moot. To complete the record in this case, FDIC's mootness claim will be addressed.

The Fifth Circuit considered the FDIC's mootness theory in *Triland Holdings & Co. v. Sunbelt Service Corp.*, 884 F.2d 205 (5th Cir.1989), where it stated:

> The general rule is that '[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable. Damages should be denied on the merits, not on grounds of mootness.' 13A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure*, § 3533.3, at 262 (1984).... We have held that '[d]ifficulties in formulating a remedy in an otherwise living case do not evidence the absence of a case or controversy.' ... Thus, the possibility that at some point [the claimants against FSLIC], if successful in their damages claims, will be able to collect is sufficient to make this a justiciable dispute.

884 F.2d at 208 (citation omitted).

The court went on to note:

> In its appellate briefs, FSLIC responds by arguing that there will *never* be any assets with which to satisfy a judgment

against [the failed financial institution] nor any means to collect from any other party, including FSLIC. If true, this contention would justify dismissal of these actions on prudential grounds.

*Id.* (emphasis in original).

On the record before it, the *Triland* court was "unable to conclude that all potential forms of relief are permanently precluded," and therefore declined to dismiss on mootness or prudential grounds the claims against FSLIC. *Id.*

Whether the *Triland* decision dictates the grant of summary judgment under the facts presented here is difficult to ascertain. On one hand, the court acknowledged that under some circumstances dismissal on such prudential grounds might be proper. But, on the other hand, the standard the court set for such a dismissal was extremely high. FDIC has shown convincingly that, under the present circumstances and the existing statutory scheme, it is not foreseeable that Burkhart could collect any part of any damage award he might obtain. All of the assets of HSA were transferred to what is now Bluebonnet Savings Association. Having inherited only HSA's liabilities, FDIC–Receiver has nothing of value to satisfy the claims against it. Further, FIRREA provides that the FDIC's maximum liability to any person having a claim against the Receiver or the failed institution for which the FDIC is acting as Receiver is the amount the claimant "would have received if the [FDIC] had liquidated the assets of the institution," 12 U.S.C. § 1821(i)(2), which in this case would be zero.

Does this state of affairs mean that "there will *never* be any assets to satisfy a judgment" and that "all potential forms of relief are permanently precluded?" At least one district court, following *Triland*, has so held. *Village South Joint Venture v. FDIC*, 733 F.Supp. 50 (N.D.Tex.1990). At present, this court declines to reach the same conclusion. One reason for the court's hesitation is the possibility, though admittedly a remote one, that circumstances and the governing statute might change. But another reason is that if the

standards the *Triland* court articulated were met, if there never will be any assets to satisfy a judgment, no reason exists why the FDIC–Receiver should not simply accept a default judgment against itself rather than demand judgment in its favor on the ground of mootness. The only effect of such a default judgment would be that FDIC–Receiver would add another person to the list of hapless HSA creditors who will not collect a penny on their claims.

Obviously, to dismiss the claims against FDIC on the mootness theory urged here results in the short-circuiting of the system whereby claims are determined on their merits. If FDIC is convinced that such a result is harmless under the present circumstances, it should accept the risk that its forecast will prove incorrect, rather than placing that risk on those with claims against it. Certainly, for the FDIC to accept a default judgment on such claims would be quicker and cheaper than seeking to obtain summary judgment based on the mootness theory presented here.

*D'Oench, Duhme* and its progeny already provide the FDIC with an extraordinary arsenal to overcome defenses against the enforcement of obligations to the FDIC and to defeat on the merits claims against it. No matter how dire the circumstances in which FDIC finds itself, little need exists to give it another magic weapon with which to conquer all foes. To do so by acceding to the mootness theory may ease the FDIC's heavy burden, but at the same time would create bad law.

## IV. *Bluebonnet's Claim against Armstrong and the Partnership*

■ As noted in the introduction to this memorandum opinion, defendants C.C. Armstrong and the Texas Country Living Partnership, the partners of which are Armstrong and the corporation, did not sign the promissory note, deed of trust, or guaranty that form the basis of this action. Armstrong became involved in the transaction approximately one year after the corporation obtained the original loan from HSA to fund the motel project. With the corporation having difficulty meeting its payment obligations under the note, HSA suggested that the corporation locate a new investor to infuse cash into the deal. Armstrong agreed to join the transaction, becoming a partner with the corporation and making an initial contribution of $235,000. Based on the agreement between the partners and a loan modification agreement executed by HSA and the partners, Bluebonnet contends that Armstrong and the partnership became liable for payment of the promissory note.

While Bluebonnet has moved that summary judgment be entered finding Armstrong and the partnership liable for the note, Armstrong and the partnership move that summary judgment be entered in their favor, finding that they have no obligation to Bluebonnet.

Plainly, Bluebonnet's claims against Armstrong and the partnership stand on a different footing than its claims against the corporation, Burkhart, and Barner. While the corporation signed the promissory note and the deed of trust, and Burkhart and Barner signed the guaranty, Armstrong and the partnership's liability to repay the loan can be established only indirectly, through secondary documents.

The loan modification agreement, entered into by HSA, the corporation, and the partnership, contains two provisions that are relevant here:

3. *Warranty Deed.* Borrower [the corporation] has executed a Warranty Deed dated April 16, 1986 (the "Deed") to Partnership conveying unto the Partnership the Property, subject to, among other exceptions, the Note.
[ ...]

### RATIFICATION

Except as the Loan Documentation and Partnership Agreement are modified by the provisions of this Agreement, the Loan Documentation and Partnership Agreement are hereby ratified and confirmed.

The provisions can be construed to reach conflicting conclusions. On one hand, that the property was conveyed, subject to the

note, to the partnership, and that the partnership ratified the Loan Documentation (which includes the promissory note), might be taken to mean that the partnership accepted liability for repayment of the note. On the other hand, the provisions may simply mean that the property is to become an asset of the partnership, with the corporation still liable for payment of the promissory note. The loan modification agreement nowhere expressly states that the partnership has agreed to become liable to repay the note.

The warranty deed by which the corporation transferred ownership of the motel property to the partnership provides:

> This conveyance is made subject to, *and the Grantee [the partnership] does not assume payment of,* the unpaid balance due and owing on that promissory note in the original principal sum of $2,100,000.00, dated April 16, 1986 (the "Note"), executed by Grantor and payable to the order of Home Savings and Loan Association of Lufkin, Texas, …

(emphasis added).

Thus the warranty deed makes clear the understanding between the corporation and the partnership that the partnership would not become liable to repay the promissory note.

Finally, a partnership agreement signed by Armstrong and the corporation provides:

> The initial contribution of [the corporation] shall be evidenced by contributing the property, subject to a $2,100,000.00 debt to Home Savings Association which shall be assumed by the partnership, and which carries the understanding with Home Savings and Loan Association that in the event of default, they shall look first to the personal guarantors of the note, next to the property underlying the note, and finally to the [partnership] itself.

Reviewing the loan modification agreement, the warranty deed, and the partnership agreement, it is impossible to conclude with certainty that Armstrong and the partnership agreed to pay the debt evidenced by the promissory note. Therefore,

Bluebonnet's motion for summary judgment, with regard to Armstrong and the partnership, should be denied.

Similarly, Armstrong and the partnership's motion for a summary judgment finding that they have no liability to Bluebonnet also should be denied. Although there is no written agreement between HSA and the partnership expressly stating that the partnership accepts liability on the note, the loan modification agreement provision stating that the partnership ratifies the loan agreement might be construed as accepting the promissory note as a debt of the partnership. If the promissory note became a partnership debt, then Armstrong, as a general partner, is jointly and severally liable for the debt. Texas Uniform Partnership Act, § 15. The law of contracts provides, of course, that if, after applying established rules of interpretation, a written instrument remains reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518–19 (Tex. 1980). Each party to this action has offered voluminous extraneous evidence concerning the meaning of the documents discussed above, in the form of oral deposition testimony and letters written contemporaneously with the transaction. Because the evidence is conflicting, it is unfeasible to conclude at this stage of the proceedings that "there is no genuine issue as to any material fact" concerning the claim of Armstrong and the partnership, that the partnership did not accept liability to repay the note. Fed.R.Civ.P. 56. Therefore, the motion of Armstrong and the partnership for summary judgment in their favor should be denied.

### Conclusion

For the reasons stated above, Bluebonnet is entitled to summary judgment against Texas Country Living, Incorporated, with regard to the promissory note and the deed of trust, and against Ted R. Burkhart and Kenneth Barner with respect to the guaranty. Further, summary judg-

ment should be granted in favor of FDIC–Receiver with regard to Burkhart's claims against it. However, in relation to Bluebonnet's demand that C.C. Armstrong and Texas Country Living Partnership be held liable for repayment of the promissory note, the motions for summary judgment of both Bluebonnet for a finding of liability and of Armstrong and the partnership for a finding of no liability should be denied.