**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carlos CASTILLO,
Defendant–Appellant.**

No. 89–6302.

United States Court of Appeals,
Eleventh Circuit.

April 18, 1991.

---

Kenneth M. Swartz, AFPD, Miami, Fla., for defendant-appellant.

Linda Collins Hertz, Carol E. Herman, Steven A. Tyrrell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

This single issue appeal raises the question of whether a counterfeit currency detector found in the possession of defendant is a "counterfeiting device" which permits enhancement of a sentence under section 2B5.1(b)(2) of the Sentencing Guidelines. Although we regard it as a close question, we affirm the district court's decision that it is.

Defendant Carlos Castillo was found guilty of unlawfully bringing approximately $8,000 in counterfeit United States currency into this country. 18 U.S.C. § 472. At sentencing, the district court concluded that defendant's base level should be increased four levels, from a level of 11 to a level of 15, based upon his possession of a "counterfeiting device" at the time of his arrest. Section 2B5.1(b)(2) provides that

[i]f the defendant manufactured or produced any counterfeit obligation or security of the United States, *or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting,* and the offense level as determined above is less than 15, increase to 15. (emphasis added).

The device possessed by defendant was an inexpensive detector costing about $20. It works on the theory that United States currency contains a detectable amount of magnetic quality ink. The detector will pick up the magnetic quality and trigger a reaction in the detector. Retail stores in the Miami area commonly use such detectors to guard against receipt of counterfeit currency.

The defendant suggests that the enhancement provided by section 2B5.1(b)(2) was meant to apply only to individuals and devices that are actually involved in the manufacture and production of counterfeit currency. Conceding that the device in this case *could* be used by a manufacturer of counterfeit currency, defendant argues that he merely distributed counterfeit currency, and that there was no evidence that the particular device defendant possessed was actually used in connection with the manufacturing or production of currency.

There seems to be no case law which guides this decision, nor are the Guidelines themselves particularly helpful. The Sentencing Commission has offered the following rationale for the enhancement provision:

Possession of counterfeiting devices to copy obligations (including securities) of the United States is treated as an aggravated form of counterfeiting because of the sophistication and planning involved in manufacturing counterfeit obligations and the public policy interest in protecting the integrity of government obligations.

*Id.* § 2B5.1, Background Note.

We hold that to permit enhancement for possession of a counterfeiting device, it is not necessary for the Government to prove that the defendant was engaged in the manufacture or production of counterfeit currency, or that the device possessed was ever in fact so used. It is only necessary

to prove that the defendant possessed a "counterfeiting device or materials used for counterfeiting." Essentially, the defendant is arguing that the provision should be read to require possession of a "counterfeiting device ... used in the manufacture or production of counterfeit currency." The more reasonable reading of the provision in view of its purpose, however, is that the possession of a device used by those involved in counterfeiting, either in manufacturing or distributing, is sufficient to trigger the enhancement provision without proof that the device was actually used for counterfeiting.

■ Although this type of device is also used by legitimate businesses for protection against counterfeit currency, the Government argues that the court should look at all the circumstances under which a defendant possessed the device to determine whether it is a counterfeiting device. There was testimony, both at trial and sentencing, indicating that counterfeiters use the device as a means of quality control.

Q. Why is it that this particular item is a tool of the trade?

A. If a counterfeiter is going to really make sure that his bill is going to be passed on to the public, like I say, he will print the counterfeit with a magnetic ink, use this item to make sure that the bill will pass and then go to, say, a store and pass it.

Mr. Swartz: Do they talk about using them in passing counterfeit bills?

The Agent: What they do is, when they are printing it up, they test them before they actually pass it to see if the bill will pass.

A device that is used for "quality control" in the manufacture of any item can be considered a device used in the manufacture of the product. It is not unreasonable, therefore, to conclude that this device, is a "counterfeiting device" within the meaning of the Sentencing Guidelines.

The fact that the device is also useful to distributors of counterfeit currency and to retailers who are trying to intercept counterfeit currency does not control the point. The device, along with $8,000 in counterfeit currency, was found in possession of defendant at the time of his arrest. The testimony before the district court clearly established that this machine would be useful to both manufacturers and distributors of counterfeit money in determining whether their product would pass freely in commerce. As a result, the district court correctly concluded that under the circumstances of this case, the defendant had possession of a counterfeiting device. The court, therefore, properly applied the enhancement under section 2B5.1(b)(2) increasing defendant's base level to 15. *See United States v. Penson*, 893 F.2d 996 (8th Cir.1990) (increasing offense level to 15 based on possession of paper cutter).

AFFIRMED.