**UNITED STATES of America**

v.

**Rodney HOLLOMAN, Appellant.**

**No. 92–1429.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 3, 1992.

Decided Dec. 8, 1992.

Sur Petition for Rehearing Dec. 30, 1992.

Mark S. Greenberg, Philadelphia, PA, for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Scott D. Godshall, Asst. U.S. Attys., for appellee.

Before SLOVITER, Chief Judge, GREENBERG and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

### I.

#### Introduction

Rodney Holloman was convicted following a jury trial of fourteen counts of possession of counterfeit securities in violation of 18 U.S.C. § 513(a), one count of use of an unassigned social security number in violation of 42 U.S.C. § 408(a)(7)(B), and two counts of possession of "an implement designed for or particularly suited for making a counterfeit or forged security with the intent that it be so used," in violation of 18 U.S.C. § 513(b). He challenges only the conviction under section 513(b). Because his challenge is one of law, our review is plenary.

In this counterfeiting scheme, which Holloman concedes, he obtained the cancelled checks of corporations and used them to order blank checks from a check printing company. Upon receipt of these checks, Holloman then issued checks in fictitious names, which he deposited into bank accounts opened under those fictitious names. In this manner, he negotiated checks drawn on the accounts of Bell of Pennsylvania, All–Luminum Products, Inc., Corestates Payroll Department, ARA Services, and the Philadelphia College of Textiles and Sciences.

Also, Holloman had engaged in negotiations to sell to an undercover agent cancelled checks which the agent could put to the same use. When Holloman was arrested, he was in possession of two cancelled checks, both drawn on Chase Manhattan Bank accounts, payable in the amounts of $781,950.90 (from TTX Company to Consolidated Rail Corporation) and $788,601.05 (from Texaco to Nemours Corp.), which Holloman was bringing to the agent for delivery. Following his conviction Holloman was sentenced to 70 months incarceration, three years supervised release, and a special assessment of $850.

### II.

#### Analysis

##### A.

The statute at issue, 18 U.S.C. § 513(b), was passed as a part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, § 1105(a), 98 Stat. 2144 (1984), and reads as follows:

Whoever makes, receives, possesses, sells or otherwise transfers an implement

designed for or particularly suited for making a counterfeit or forged security with the intent that it be so used shall be punished....

18 U.S.C. § 513(b).

 Holloman contends that the cancelled checks in his possession were not "implements" falling within this statutory language. Holloman ascribes only a technical meaning to "implements," and argues that the term, as commonly defined, is limited to a tool or instrument. Admittedly, that is the usual meaning, but it is not the exclusive one. Thus, for example, the dictionary also includes as an implement "anything ... necessary to effect an end or perform a task," and gives as an example "propaganda as an *implement* of cold war." *Webster's Third New International Dictionary* 1134 (1976). We see no reason to limit the statutory language to a physical tool, as Holloman argues.

Section 513 was derived from Senate Bill 1630 of the 97th Congress, and was intended to create "a new offense for counterfeiting the securities of ... corporations." *See* 1984 U.S.C.C.A.N. 3182, 3512. The Senate Judiciary Committee considered a recommendation that would have limited the reach of the statute to implements "uniquely associated with or fitted for the preparation of" specified written instruments. S.Rep. No. 307, 97th Cong., 1st Sess. 788 (1984). The Committee rejected this recommendation because it would have "exclude[d] from coverage implements which are normally put to legitimate uses." *Id.* Instead, the Committee Report makes clear that the Committee intended that the definition of implement be construed broadly "to include all materials that could be used in producing the prohibited items, including those items that have a legitimate use." *Id.* at 792.

Thus, although the same Report noted that

> [t]he term "implement" [was] used throughout this discussion as a shorthand expression ... to refer, *inter alia,* to plates, stones, engravings, photographs, prints, impressions, stamps, im-

prints, tools, instruments, dies, hubs, molds, distinctive papers, etc.[,]

*id.* at 789 n. 117, there is nothing to suggest that a cancelled check with particularly useful information may not be an "implement" of counterfeiting or forgery. The intended broad reach of the statute is reflected in the statutory language covering not only an "implement designed for" making a counterfeit or forged security but also an implement "particularly suited for" making a counterfeit or forgery.

In this case, Holloman used the cancelled checks for four purposes—all of which demonstrate that although the checks were not "designed for" counterfeiting, they were "particularly suited for" it in the hands of one like Holloman. He secured and noted the check numbers to arrange that the checks he was about to order would fit sequentially in the drawer's checking account; he noted the amount of the checks to gauge the amount for which he could draw the counterfeit check; he copied and transmitted the inter-bank code numbers appearing on the checks; and, finally and crucially, he used the signatures on the legitimate checks to create a facsimile signature which he used to endorse the checks received from the check printers. It is unlikely that any other tool could have been as effective in Holloman's scheme as were these legitimate cancelled checks. *See United States v. Delia,* 944 F.2d 1010, 1014 (2d Cir.1991) (the "making" of forged checks included the first and essential steps in the fraudulent scheme, i.e., the acquisition of both the checks and the traceable signature).

We have found no cases interpreting the meaning of "implement" in section 513(b). We note that in *United States v. Castillo,* 928 F.2d 1106 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 309, 116 L.Ed.2d 252 (1991), the court, in considering the different issue of the scope of a "counterfeiting device" for purposes of determining a sentence under § 2B1.1(b)(2) of the Sentencing Guidelines, gave the term a broad construction, and held that a counterfeit currency detector could be considered a "counterfeiting device" because it could be used by a manufacturer of counterfeit currency for

quality control. *Id.* at 1108. Although the relevant language is different from that at issue here, we deem the approach taken by that court instructive. Finding no reason to cabin the statutory language to a physical "implement," we will affirm the conviction of Holloman for possessing an implement particularly suited for counterfeiting.

### B.

■ Holloman also argues that the district court erred in the calculation of his sentence. Pursuant to the recommendation of the presentence report, the court increased Holloman's offense level under U.S.S.G. § 2F1.1(b)(1)(M) from the assigned base of 6 for fraud and deceit by 12 offense levels to reflect an aggregate loss of more than $1.5 million. Application Note 8 to that Guideline provides:

> For the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations. The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss.

U.S.S.G. § 2F1.1 Application Note 8.

In this case the court determined that the attempted loss attributable to Holloman was $1,570,551.95 based on the face value of the two cancelled checks found on Holloman at the time of his arrest.

Surprisingly, Holloman does not argue here and apparently did not argue in the district court that the amount of those checks should have been discounted, because the amount that he could have received for them from the agent was significantly less than the face value. Therefore, we need not consider the effect of any such possible argument. Instead Holloman argues that there was no "loss" at all because the checks, which had already been credited to the account of the respective payers, were about to be processed and debited to the accounts of the drawers. Thus, he claims Texaco and TTX sustained no loss and he derived no gain.

■ Holloman overlooks, however, that the purpose of the cancelled checks was not to draw on them but to use them in a counterfeiting scheme which could easily have led to a loss in the neighborhood of the amount of the cancelled checks themselves. Thus, because the Guideline covers not only actual loss but also intended loss, if that amount is higher than actual loss, *see United States v. Kopp*, 951 F.2d 521, 530 (3d Cir.1991), we cannot hold that the district court's estimate of the loss is without support in the record, *see United States v. Cianscewski*, 894 F.2d 74, 80 (3d Cir.1990).

### III.

For the reasons set forth we will affirm the judgment of conviction and sentence.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS and SEITZ\*, Circuit Judges.

### SUR PETITION FOR REHEARING

#### Dec. 30, 1992.

The petition for rehearing filed by appellant, Rodney Holloman, in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

---

\* Honorable Collins J. Seitz, Senior Circuit Judge, as to panel rehearing only.