**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mario J. TAYLOR, Defendant–Appellant.**

**No. 92–10213.**

United States Court of Appeals,
Ninth Circuit.

Submitted March 8, 1993.[*]
Decided April 13, 1993.

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and 9th Cir.R. 34–4.

**534**

Janice M. Heid, Oakland, CA, for defendant-appellant.

Steven F. Gruel, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before GOODWIN, NOONAN, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## I.

## OVERVIEW

A jury convicted appellant Mario Taylor (Taylor) of aiding and abetting the counterfeiting of United States currency and possession of counterfeit currency in violation of 18 U.S.C. § 2 and 18 U.S.C. § 472. He was sentenced to a fifty-one month jail term followed by three years of supervised release. He appeals claiming that the district court erred in interpreting the sentencing guidelines. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm.[1]

## II.

## BACKGROUND

Taylor was indicted for possession of counterfeit Federal reserve notes, counterfeiting and aiding and abetting counterfeiting. A jury found Taylor guilty on both the possession and aiding and abetting counts but acquitted him of counterfeiting.

At sentencing, the district court found that Taylor had "possessed or had custody over a photocopying machine involved with these crimes," and had "obviously produced counterfeit currency." Based on this finding, the district court raised Taylor's offense level to fifteen pursuant to U.S.S.G. § 2B5.1(b)(2), sentencing him to the maximum penalty of fifty-one months.

Taylor now appeals claiming that the district court erred in increasing his offense level to fifteen under section 2B5.1(b)(2) on 3 grounds: (1) application note 3 to section 2B5.1 prohibits the application of subsection (b)(2) where a photocopier is the means of production of the counterfeit currency; (2) the level of sophistication of production

---

**1.** Other issues raised by Taylor are addressed in an unpublished memorandum.

was not high enough to implicate section 2B5.1(b)(2); and (3) the district court's application of section 2B5.1(b)(2) caused disparity in sentencing.

## III.

## DISCUSSION

Taylor contends that the district court erred in sentencing him at an offense level of fifteen under U.S.S.G. § 2B5.1(b)(2), inasmuch as he used a photocopier to produce the counterfeit notes.

We review a district court's application of sentencing guidelines *de novo. United States v. Uzelac,* 921 F.2d 204, 205 (9th Cir.1990). However, factual findings under the guidelines are reviewed for clear error. *Id.*

### A. *Application Note 3*

■ U.S.S.G. § 2B5.1(b)(2) provides that the offense level should be increased to fifteen where the defendant manufactured or produced counterfeit obligations or had possession, custody or control over a counterfeiting device or materials used for counterfeiting. Application Note 3 to section 2B5.1, however, states that "[s]ubsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny."

■ Taylor contends that application note 3 reflects the Sentencing Commission's view that the use of a photocopier does not involve the level of sophistication and planning which subsection (b)(2) was intended to punish. Therefore, application note 3 should apply to all situations in which a photocopier is used for counterfeiting.

This circuit has not addressed how application note 3 is to be interpreted. The Tenth Circuit did reach the issue in *United States v. Bruning,* 914 F.2d 212 (10th Cir.), *cert. denied,* 498 U.S. 990, 111 S.Ct. 531, 112 L.Ed.2d 541 (1990). Bruning was in possession of a color office copier and green ink as well as other materials used for counterfeiting. *Id.* at 212. As in the present case, he argued that application note 3 should be interpreted to exclude

from subsection (b)(2) all persons who use photocopiers to produce counterfeit notes. *Id.* at 213. The Tenth Circuit interpreted application note 3 to "exclud[e] from subsection (b)(2) those defendants who produce notes, by photocopying or other means, that 'are so obviously counterfeit that they are unlikely to be accepted even if subjected only to minimal scrutiny.'" *Id.* The court reasoned that the interpretation of application note 3 urged by the defendant "would protect even the most successful counterfeiters" from an enhanced sentence, simply because they chose photocopying as their method of production. *Id.* We find the reasoning in *Bruning* persuasive and adopt the Tenth Circuit's interpretation of application note 3.

In this case, the district court adopted the findings of the special master that $6,970 of the counterfeit currency was potentially passable. Currency that is considered to be "potentially passable" cannot be said to be "so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." U.S.S.G. § 2B5.1 cmt. note 3 (1992). Therefore, the district court did not err in enhancing Taylor's sentence under subsection (b)(2).

### B. *Level of Sophistication*

■ Taylor, noting that the defendant in *Bruning* used a color copier with green ink to produce counterfeit currency, argues that even under the holding in *Bruning,* it was error to sentence him under subsection (b)(2) because possession of a black and white office copier does not represent the level of sophistication which subsection (b)(2) was intended to punish. Taylor relies on the background note to section 2B5.1 which states that "[p]ossession of counterfeiting devices to copy obligations (including securities) of the United States is treated as an aggravated form of counterfeiting because of the sophistication and planning involved in manufacturing counterfeit obligations."

This circuit has not addressed the level of sophistication necessary to implicate subsection (b)(2), but again we find the holdings of other circuits to be persuasive. In *United States v. Castillo,* 928 F.2d 1106

(11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 309, 116 L.Ed.2d 252 (1991), the Eleventh Circuit held that the possession of a counterfeit currency detector valued at approximately $20 was sufficient grounds for enhancing the defendant's sentence. *Id.* at 1108. And in *United States v. Penson,* 893 F.2d 996 (8th Cir.1990), the Eighth Circuit found no error in the district court's enhancement of defendant's sentence for providing a paper cutter to be used in the production of counterfeit currency. *Id.* at 998.

The use of a black and white office copier clearly represents a higher level of sophistication in the production of counterfeit currency than does a $20 counterfeit detector or common paper cutter. We hold that the use of a black and white copier, as opposed to a color copier with green ink, is not sufficient to distinguish this case from *Bruning,* and therefore, subsection (b)(2) was properly applied.

### C. *Disparity in Sentencing*

 Finally, Taylor contends that enhancing his sentence pursuant to subsection (b)(2) creates disparity in sentencing between himself and Robert Grow, his co-defendant. Grow entered into a plea agreement which stipulated that "[s]ection 2B5.1(b)(2) does not apply in this case, as the counterfeit notes in question were merely photocopied." He argues that to sentence him under different standards than were used for Grow would defeat the purpose of the guidelines by creating disparity in sentencing similarly situated defendants. This argument is meritless.

 We have held "that a disparity in sentencing among co-defendants is not, by itself, a sufficient ground for attacking an otherwise proper sentence under the guidelines." *United States v. Hoy,* 932 F.2d 1343, 1345 (9th Cir.1991). Rather, a defendant can only challenge his sentence by showing that it was the "result of incorrect or inadmissible information, or an incorrect application of the Sentencing Guidelines." *United States v. Carpenter,* 914 F.2d 1131, 1136 (9th Cir.1990).

We hold that the application of the Sentencing Guidelines by the district court was proper. Therefore, the challenge to the sentence on the basis of disparity must fail.

### IV.

### CONCLUSION

The district court properly enhanced Taylor's sentence under U.S.S.G. § 2B5.1(b)(2) based on its findings that Taylor produced counterfeit currency which was potentially passable. Furthermore, we conclude that the use of a black and white office copier represents a level of sophistication which subsection (b)(2) was intended to punish. Finally, the fact that Taylor's co-defendant's sentence was not enhanced under subsection (b)(2) does not constitute grounds for reversal.

AFFIRMED.