# United States Court of Appeals
## For the First Circuit

———————

Nos. 13-1594
    13-1597

UNITED STATES OF AMERICA,

Appellee,

v.

JOE L. SUÁREZ-GONZÁLEZ, a/k/a JOEY,

Defendant, Appellant.

———————

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

———————

Before

Torruella, Selya and Lipez,
Circuit Judges.

———————

Guillermo A. Macari-Grillo on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, on brief for appellee.

———————

July 23, 2014

———————

**SELYA, <u>Circuit Judge</u>.** Defendant-appellant Joe L. Suárez-González pleaded guilty to an array of counts, spread over two separate indictments, involving the theft and/or conversion of postal money orders from the United States Postal Service (USPS). The district court sentenced him to serve twenty-one months in prison. The appellant challenges the procedural and substantive reasonableness of his sentence. The first of these challenges presents a question of first impression with respect to the interpretation of a guideline enhancement provision, USSG §2B5.1(b)(2)(A). Finding both his procedural and substantive challenges unavailing, we affirm.

## I.   BACKGROUND

Because these appeals trail in the wake of guilty pleas, we glean the facts from the plea agreements, the change-of-plea colloquy, the uncontested portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. <u>See</u> <u>United States</u> v. <u>Nguyen</u>, 618 F.3d 72, 73 (1st Cir. 2010).

In the fall of 2011, the appellant was employed as a construction worker in connection with the remodeling of a postal station in San Juan, Puerto Rico (the Facility). While toiling there, he stole and cashed four USPS money orders. He then filched a key to the Facility and gave it to a confederate (Santiago Peña). Using this key, Peña surreptitiously entered the Facility and, acting on the appellant's instructions, printed 126 bogus USPS

-2-

money orders.  The pair later arranged for others to go to post offices in the area and cash the money orders.

This scheme unraveled after postal inspectors received a tip about an attempt to redeem a suspicious money order.  The ensuing investigation produced two indictments.  After initially maintaining his innocence, the appellant elected to plead guilty to 126 counts, spread over both indictments, of aiding and abetting others in stealing or knowingly converting postal money orders. See 18 U.S.C. §§ 2, 500.

The plea agreement referable to the first of the two indictments suggested some preliminary guideline calculations: a base offense level of nine, see USSG §2B5.1(a); a four-level enhancement for loss in excess of $10,000 but not more than $30,000, see id. §2B5.1(b)(1)(B); and a two-level reduction for acceptance of responsibility, see id. §3E1.1(a).  If the appellant's criminal history score placed him in criminal history category (CHC) I, the guideline sentencing range (GSR) was estimated to be eight to fourteen months.

The plea agreement referable to the second indictment also suggested a series of preliminary guideline calculations: a base offense level of nine, see id. §2B5.1(a); a six-level enhancement for loss in excess of $30,000 but not more than $70,000, see id. §2B5.1(b)(1)(B); and a two-level reduction for acceptance of responsibility, see id. §3E1.1(a).  If the

-3-

appellant's criminal history score placed him in CHC I, the GSR was estimated to be twelve to eighteen months.

Both plea agreements permitted the appellant to request, without opposition from the government, a split sentence (that is, a sentence to be served partly in prison and partly in home confinement).  Moreover, the government stipulated that it would not oppose concurrent sentences.

The district court accepted the appellant's guilty pleas at an omnibus change-of-plea hearing.  At the conclusion of this hearing, the court ordered the preparation of a PSI Report.  When received, the PSI Report treated the two indictments as a unit and grouped all of the counts of conviction for a combined offense level of nine.  See id. §3D1.2(d).  It then recommended an eight-level enhancement for an aggregate monetary loss above $70,000 but not more than $120,000, see id. §2B5.1(b)(1)(B), and a three-level reduction for acceptance of responsibility, see id. §3E1.1(b).  It likewise recommended a two-level enhancement under USSG §2B5.1(b)(2)(A) because the appellant "possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting."  Finally, it tabulated the appellant's criminal history score and recommended that he be placed in CHC II.

At sentencing, the district court embraced the grouping concept and the offense level adjustments.  However, the court calculated the appellant's criminal history score more charitably

and placed him in CHC I.  These determinations yielded a GSR of twenty-one to twenty-seven months, and the court imposed a bottom-of-the-range incarcerative sentence.  These timely appeals ensued.

## II. ANALYSIS

In this venue, the appellant claims that his sentence is both procedurally and substantively unreasonable.  We proceed directly to these arguments, bypassing the government's problematic contention that these appeals are barred by the waiver-of-appeal provision contained in each of the appellant's plea agreements. See United States v. Pérez-Crespo, 557 F. App'x 6, 7 n.1 (1st Cir. 2014) (adopting a similar approach).

### A. The Procedural Claims.

The appellant argues that his sentence is procedurally flawed for two reasons.  We address these arguments separately.

1. USSG §2B5.1(b)(2)(A).  The appellant concedes the correctness of all but one of the district court's guideline calculations.  He challenges only the two-level enhancement under USSG §2B5.1(b)(2)(A).

By its terms, this enhancement applies to a defendant who has "manufactured or produced any counterfeit obligation . . . of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting." USSG §2B5.1(b)(2)(A).  The appellant says that he did not use a "counterfeiting device."  Rather, the postal money orders at issue

here were genuine (that is, printed with conventional USPS equipment on authentic postal money order blanks). Therefore, the enhancement does not pertain.

We review the district court's interpretation of the sentencing guidelines de novo. See United States v. Clark, 685 F.3d 72, 79 (1st Cir. 2012). Here, the appellant's argument turns on the meaning of "counterfeiting device." As is true of the interpretation of statutes, the language of a guideline provision furnishes the most reliable guide to its interpretation. See United States v. Dixon, 449 F.3d 194, 202 (1st Cir. 2006). When the language of the guideline is plain and unambiguous, that is the end of the matter. See id. at 203. If, however, the language of the guideline leaves legitimate room for doubt, an inquiring court may look to other interpretive aids, including context and background. See United States v. Alvarez-Cuevas, 415 F.3d 121, 125 (1st Cir. 2005).

We think that the term "counterfeiting device" has a plain, ordinary, and unambiguous meaning: a device used for counterfeiting. While the guidelines do not define this term, the Sentencing Commission has explicitly defined a "counterfeit" as "an instrument that has been falsely made, manufactured, or altered." USSG §2B5.1, comment. (n.1). In turn, "alter" means "[t]o make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entirely

new thing or destroying the identity of the thing affected." Black's Law Dictionary 77 (6th ed. 1990).

This definition of "counterfeit" informs the meaning of the term "counterfeiting device." By arranging for the printing of fake dollar amounts on otherwise worthless money order blanks, the appellant "altered" those blanks — and this alteration was accomplished through the use of a machine. Taken at face value, the appellant's actions comprise alteration of postal money orders through the use of a mechanical counterfeiting device. No more is exigible to warrant application of the enhancement.

The appellant rejoins that the word "alter[]" in the counterfeiting context is a term of art. He notes that the definition of "counterfeit" was added to the sentencing guidelines in 2009, see USSG App. C, Amend. 731 (2009), and that prior to that time the term was undefined. He correctly points out that the addition of the definition was intended to resolve differing judicial treatment of so-called "bleached note" cases — cases in which defendants chemically stripped genuine United States currency and reprinted it with higher values. See id.; compare, e.g., United States v. Schreckengost, 384 F.3d 922, 923-25 (7th Cir. 2004), with, e.g., United States v. Dison, No. 07-50072-04, 2008 WL 351935, at *1-2 (W.D. La. Feb. 8, 2008). The new definition made pellucid that "bleached note" schemes would qualify as

-7-

counterfeiting because such schemes involved the false alteration of genuine monetary instruments.

Building on this foundation, the appellant insists that the word "alter" is meant to apply exclusively to the "bleached note" context. But this reading is far too crabbed. Although part of the impetus for the 2009 amendment was to clarify that "bleached note" cases are subject to the enhancement under §2B5.1(b)(2)(A), the language of the amendment was in no way limited to such cases. To the contrary, the Sentencing Commission stated unreservedly that the new definition was meant to insure that "altered instruments are treated as counterfeit and sentenced under §2B5.1." USSG App. C, Amend. 731 (2009). The appellant's offenses plainly involved altered instruments.

To cinch matters, in crafting the amendment the Sentencing Commission expressly recognized that new technologies had "rendered obsolete the previous distinction in the guidelines between an instrument falsely made or manufactured in its entirety and a genuine instrument that is altered." Id.[1] Based on this language, we find it hard to accept the appellant's interpretation that bleached notes are the only "altered" instruments to which this enhancement is meant to apply.

---

[1] The reference to the "previous distinction" reflects an earlier application note, which had indicated that "counterfeit" was not meant to apply to "genuine instruments that have been altered." USSG §2B5.1, comment. (n.3) (Nov. 2008). The 2009 amendment deleted this application note.

The appellant next argues that the "device" that Peña used at the appellant's direction to create bogus money orders was an authentic money order printer. This fact, he says, insulates him from any claim that the printer was a counterfeiting device and, thus, insulates him from the enhancement. That argument is hopeless. The authenticity of the printer in no way diminishes the counterfeit nature of the ersatz money orders printed at the appellant's direction. This enhancement has routinely been applied to counterfeits created through the use of legitimate devices, see, e.g., United States v. Taylor, 991 F.2d 533, 535-36 (9th Cir. 1993) (photocopy machine); United States v. Castillo, 928 F.2d 1106, 1108 (11th Cir. 1991) (counterfeit money detector); United States v. Penson, 893 F.2d 996, 998 (8th Cir. 1989) (paper cutter), and we have no difficulty in approving the district court's application of it here.

As a last resort, the appellant seeks to find sanctuary in the rule of lenity. The rule of lenity generally applies to criminal statutes that are subject to more than one plausible interpretation and demands that the interpretation more favorable to the defendant prevail. See Jones v. United States, 529 U.S. 848, 858 (2000); United States v. Aponte-Guzmán, 696 F.3d 157, 160 (1st Cir. 2012). We have looked with favor on the application of this rule to a sentencing guideline when "substantial ambiguity as to the guideline's meaning persists even after a court looks to its

text, structure, context, and purposes." <u>United States</u> v. <u>Damon</u>, 595 F.3d 395, 401 (1st Cir. 2010).

Here, however, the rule of lenity is purely a makeweight. There is simply nothing ambiguous either about the meaning of the guideline provision or about its applicability to the appellant's conduct. The unvarnished text of the guideline, reinforced by the commentary, leaves no doubt but that it reaches the conduct to which the appellant pleaded guilty. It follows inexorably that the rule of lenity has no bearing.

That ends this aspect of the matter. The two-level enhancement under §2B5.1(b)(2)(A) is meant to reflect the increased culpability of the producer of counterfeit obligations as compared to the culpability of one who merely possesses or passes counterfeit obligations. <u>See</u> <u>United States</u> v. <u>Webb</u>, 616 F.3d 605, 609 (6th Cir. 2010); USSG §2B5.1, comment. (backg'd). The Sentencing Commission was obviously concerned about the planning and degree of sophistication incident to the production of counterfeit government obligations and, thus, understandably treated production as an aggravating factor. <u>See</u> USSG §2B5.1, comment. (backg'd). Seen in this light, the appellant's conduct comes within the heartland of the enhancement. Consequently, we

hold that the sentencing court did not err in applying the two-level enhancement under §2B5.1(b)(2)(A).[2]

2. 18 U.S.C. § 3553(a). The appellant's second claim of procedural error posits that the lower court did not give fair and balanced consideration to the sentencing factors limned in 18 U.S.C. § 3553(a). Assaying this claim of error under a deferential abuse-of-discretion standard, see United States v. Vargas, 560 F.3d 45, 51 (1st Cir. 2001), we find it meritless.

Once a sentencing court determines a defendant's GSR, it is then required to consider the factors specified in 18 U.S.C. § 3553(a). See Vargas, 560 F.3d at 48. Withal, the court "is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision." Dixon, 449 F.3d at 205. Nor is the court required to give every factor equal weight. See id.

Reviewing the sentencing proceedings as a whole, we are satisfied that the court appropriately considered the section 3553(a) factors. The court, referring to a number of those factors and elaborating upon the appellant's background and criminal past, determined that the twelve-month sentence recommended by the

---

[2] We note that the application notes provide that this enhancement applies only to the counterfeiting of "bearer obligations of the United States." See USSG §2B5.1, comment. (n.2). The record is opaque as to whether USPS money orders fit this description. Since the appellant has raised no issue in this regard, we express no view on it here.

government pursuant to the plea agreements did not reflect the gravity of the offenses of conviction, did not promote respect for the law, did not serve the end of deterrence, and did not adequately address the need for condign punishment. Bearing in mind that a sentencing court need not explicitly address every consideration that enters into its decisional calculus, see United States v. Fernández-Hernández, 652 F.3d 56, 72 (1st Cir. 2011), we are satisfied that the court below sufficiently weighed the section 3553(a) factors.

We have seen this movie before. Stripped of rhetorical flourishes, the appellant's real complaint is not that the district court overlooked or misapprehended relevant sentencing factors but, rather, that the court gave more weight to factors that the appellant regarded as unimportant and less weight to factors that the appellant regarded as salient. Although defendants often complain about this sort of picking and choosing, such selective triage is precisely the function that a sentencing court is expected to perform.

## B.  The Substantive Claim.

Finally, the appellant contends that his twenty-one month sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. See United States v. Gall, 552 U.S. 38, 46 (2007); United States v. King, 741

F.3d 305, 307 (1st Cir. 2014). Applying that standard of review, we reject the appellant's contention.

There will rarely, if ever, be a single "perfect" sentence in any given case. Rather, there will be a range of reasonable sentences for a particular subset of criminal activity. See United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014). Within this range, district courts have wide discretion to fashion specific sentences. See United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012).

In this case, the appellant's sentence is at the nadir of a properly calculated GSR. Consequently, demonstrating that the sentence is substantively unreasonable requires an especially steep uphill climb. See United States v. Deppe, 509 F.3d 54, 62 (1st Cir. 2007). As long as the sentence imposed is grounded in a plausible view of the circumstances and its duration is defensible, the defendant cannot scale the required heights. See United States v. Carrasco-De-Jesús, 589 F.3d 22, 30 (1st Cir. 2009); United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

Here, the district court articulated a plausible rationale and arrived at a defensible result. The appellant's conduct was serious: it included using stolen materials to orchestrate the production of a large number of bogus money orders, valued at more than $100,000. It also included recruiting accomplices to cash the bogus money orders. The duration of the

sentence — twenty-one months — is commensurate with the seriousness of the offenses. Because the punishment comfortably fits the crime, there is no principled way to call this sentence substantively unreasonable. See Santiago-Rivera, 744 F.3d at 234. In other words, there was no abuse of discretion.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we uphold the appellant's sentence.


**Affirmed.**