UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Gaius Dipigney

    v.

AutoZoners, LLC

Civil No. 13-cv-304-LM
Opinion No. 2014 DNH 214

**O R D E R**

In a case that has been removed from the Merrimack County Superior Court, Gaius Dipigney has sued his former employer, AutoZoners, LLC, in two counts, asserting claims under both state and federal law for national-origin discrimination. Before the court is AutoZoners' motion for summary judgment. Dipigney objects. For the reasons that follow, AutoZoners' motion for summary judgment is granted.

### Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (quoting Cortés-Rivera v. Dept. of Corr., 626 F.3d 21, 26 (1st Cir. 2010)); see also Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must "view[ ] the entire record 'in the light most

hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cnty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

## Background

Unless otherwise indicated, the following facts are undisputed. Dipigney is African American. He was born in St. Lucia, West Indies, and speaks with an accent. AutoZoners hired him as a part-time sales clerk in September of 2009. In April of 2011 he received a promotion to the position of Parts Sales Manager and a transfer to AutoZoners' store in Hooksett, New

Hampshire.  Neil Thompson was the District Manager for the New England District.[1]

As a Parts Sales Manager, Dipigney was responsible for answering telephone calls from commercial customers when those who had primary responsibility for that task were unavailable. As a result, Dipigney answered about one call per day from a commercial customer.  In April or May of 2011, Thompson learned that some commercial customers had reported having difficulty understanding Dipigney on the telephone because of his accent. In May of 2011, Thompson spoke with Dipigney about that issue. Dipigney says that Thompson said: "Gaius, I would like you not to answer the commercial calls because customers don't understand your accent."  Def.'s Mem. of Law, Billok Decl., Ex. G, Dipigney Dep. (doc. no. 16-9) 61:18-20.  Thompson describes his conversation with Dipigney a bit differently: "I did not tell him not to – nor ask him not to – answer commercial calls. Instead, I simply suggested that if a commercial customer complains of difficulty understanding him on the phone, he should pass off the call to someone else at the store."  Def.'s

---

[1] There may be some minor disagreement over whether Thompson was Dipigney's District Manager for the entire time he was employed at the Hooksett store, but whether that was the case does not appear to be a material fact.  See Daniels v. Agin, 736 F.3d 70, 78 (1st Cir. 2013) ("A fact is material if it could affect the outcome of the suit under governing law.") (citation omitted).

Mem. of Law, Thompson Decl. (doc. no. 16-26) ¶ 22. For purposes of ruling on AutoZoners' motion for summary judgment, the court adopts Dipigney's version.

"On May 22, 2011, Dipigney was promoted to full-time status and received [a] pay raise [from $10.50 per hour] to $11.35 per hour." Def.'s Mem. of Law, Haluga Decl. (doc. no 16-12) ¶ 11. In October of 2011, five months after Thompson told Dipigney not to answer calls from commercial customers, Dipigney received a positive performance review and an increase in pay that he characterizes as one of the highest raises given to any employee in the Hooksett store. See Dipigney Dep. 76:23-77:1.

The incident that led to Dipigney's discharge occurred on March 30, 2012, eleven months after Thompson told Dipigney not to answer calls from commercial customers. On that day, after his shift was over, Dipigney spent approximately 45 minutes inside the Hooksett store, waiting to be picked up, while wearing a hip holster containing a visible handgun. In 2012, the AutoZoners company policy regarding workplace security, of which Dipigney was aware, provided in pertinent part:

- AutoZoners must never

. . . .

   - bring a gun, knife that has a blade over 3 inches
     in length, or other weapon into the workplace.
     Workplace includes all AutoZone property,

4

> buildings, facilities, vehicles and parking areas unless otherwise authorized by state law.

Def.'s Mem. of Law, Haluga Decl., Ex. H (doc. no. 16-20), at Bates 0421. Later in the day on which Dipigney carried his gun inside the Hooksett store, Thompson received a complaint from a customer concerning an employee at the Hooksett store named Gaius who was carrying a gun on his waist. Thompson directed the Regional Human Resources Director, Nick Haluga, to investigate. Haluga subsequently reported to Thompson that Dipigney had admitted to bringing his gun inside the store, and recommend that Dipigney be discharged. Thompson concurred, and on April 11, 2012, AutoZoners terminated Dipigney's employment. This suit followed.

In his complaint, Dipigney claimed that the change in his job duties in May of 2011 and his discharge in April of 2012 were acts of racial discrimination by AutoZoners. Dipigney now characterizes his claim as one for national-origin discrimination based upon his discharge, and the court proceeds on that basis. At various points Dipigney also characterizes Thompson's directive not to answer calls from commercial customers as an illegal act. But, it does not appear that he is basing a legal claim on that directive and, even if he were, the court would readily rule that directing Dipigney not to answer calls from commercial customers does not qualify as a

sufficiently adverse employment action to support a Title VII claim. As the First Circuit has explained:

> An adverse employment action "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). To be adverse, an employment action "must materially change the conditions of plaintiffs' employ." Id. (quoting Gu v. Bos. Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002)) (internal quotation marks omitted).

Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012) (parallel citations and subsequent history omitted). Telling Dipigney not to answer calls from commercial customers was not a material change in the conditions of Dipigney's employment. See id. ("The loss of a shift on holiday weeks . . . does not rise to the level of an adverse employment action.").

## Discussion

Dipigney asserts claims for national-origin discrimination under both New Hampshire's Law Against Discrimination, N.H. Rev. Stat. Ann. ch. 354-A (Count I), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count II). "Because the New Hampshire Supreme Court relies on Title VII cases to analyze claims under RSA 354-A, the court will address [Dipigney' state and federal] claims together using the Title

6

VII standard." Hubbard v. Tyco Intg. Cable Sys., Inc., 985 F. Supp. 2d 207, 218 (D.N.H. 2013) (quoting Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc., 822 F. Supp. 2d 84, 92 (D.N.H. 2011)).

A. Relevant Law

Under Title VII, it is unlawful for an employer to discriminate against an employee because of the employee's national origin. See 42 U.S.C. § 2000e-2(a)(1). Because there is no direct evidence of discrimination in this case, the court must "apply the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792 (1973), to help 'sharpen the inquiry into the elusive factual question' of the employer's motivation." Hicks v. Johnson, 755 F.3d 738, 744 (1st Cir. 2014) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 n.8 (1981); citing Johnson v. Univ. of P.R., 714 F.3d 48, 53-54 (1st Cir. 2013)) (parallel citations omitted).

> Under that framework, if the plaintiff establishes a prima facie case of discrimination, an inference of discrimination arises, and the burden of production shifts to the defendant to produce evidence that the challenged employment action was taken for a legitimate, non-discriminatory reason. Johnson, 714 F.3d at 53-54. If the employer supplies such evidence, the plaintiff is left with the burden to prove "by a preponderance of the evidence that the employer's proffered reason is pretextual and that the actual reason for the adverse employment action is discriminatory." Id. at 54; see also Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 40 (1st Cir. 2013).

7

Hicks, 755 F.3d at 744.  Under the circumstances of this case, to make out a prima facie case, Dipigney "must show that: (1) [he] is a member of a protected class; (2) [his] employer took an adverse employment action against [him]; (3) [he] was otherwise qualified; and (4) [his] position remained open or was filled by a person with qualifications similar to [his]." Johnson, 714 F. 3d at 53 n.6 (citing García v. Bristol–Myers Squibb Co., 535 F.3d 23, 30 n.2 (1st Cir. 2008); Rodriguez–Cuervos v. Wal–Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999)).

## B. Prima Facie Case

It is not entirely certain that Dipigney has established a prima facie case.  There is no problem with the first three elements.  Dipigney's West Indian heritage places him in a protected class for purposes of a claim for national-origin discrimination, and his discharge was an adverse employment action.  AutoZoners does not contest the third element, and all the evidence suggests Dipigney was otherwise qualified for his position.  The difficulty arises with the fourth element.

Dipigney has produced no evidence concerning what happened to his position after he was discharged, i.e., whether the position remained open or was filled by a person outside his

8

protected class.  But, the real gravamen of the fourth element concerns whether the adverse employment action took place under circumstances that would give rise to an inference of discrimination.  In cases involving employment actions other than discharge, courts have turned to evidence of disparate treatment, see, e.g., Sellers v. U.S. Dep't of Defense, 654 F. Supp. 2d 61, 91 n.65 (D.R.I. 2009), and that appears to be Dipigney's approach to establishing the fourth element of his prima facie case.  He points to evidence that one AutoZoners employee (John Burrows) carried a knife at work without being discharged and another (Iggy Farcone) carried a gun.  Leaving aside AutoZoners' challenges to the admissibility of this evidence, Dipigney's attempt to establish disparate treatment suffers from a more fundamental problem; the lack of comparability.

When making an argument based upon disparate treatment, "a plaintiff must show that others similarly situated to him in all relevant respects were treated differently by the employer." Cham, 685 F.3d at 97 (quoting García, 535 F.3d at 31; citing Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003)) (emphasis, internal quotation marks, and brackets omitted). Here, assuming for the sake of argument that Dipigney has produced sufficient evidence that two fellow employees outside

his protected class were not discharged for carrying weapons at work, he has fallen short of showing that he was similarly situated to those employees in all relevant respects. Specifically, he has not shown that those violations of company policy were the subject of customer complaints or were known to Thompson or any other AutoZoners District Manager. Moreover, with regard to Burrows, Thompson has stated under oath that "[d]uring Burrows' employment, [he] was never aware and never heard of Burrows having knives or other weapons with him on store premises – nor did [he] ever receive a customer complaint regarding Burrows alleged possession of a weapon." Def.'s Mem. of Law, Thompson Decl. (doc. no. 16-26) ¶ 18. If Thompson knew about the violations of company policy by other employees that Dipigney identifies, and did not discharge the employees involved, that might well be enough to establish the fourth element of Dipigney's prima facie case. But, it is Dipigney's burden to establish the requisite similarity between himself and his purported comparators, and he has not done so.

In sum, the court is not at all certain that Dipigney has established a prima facie case of national-origin discrimination. But, as the burden of doing so is a modest one, see Ahmed v. Johnson, 752 F.3d 490, 497 (1st Cir. 2014) (quoting Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir.

10

2010)), the court assumes that Dipigney has established his prima facie case and, as a consequence, will continue with the McDonnell-Douglas analysis. AutoZoners has produced evidence of a legitimate non-discriminatory reason for discharging Dipigney, his possession of a firearm on company property, in violation of company policy. When, as here, "the defendant proffers legitimate reasons for the adverse action, the plaintiff must then prove by a preponderance that the proffered reasons by the defendant are a pretext for unlawful discrimination." Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 46 (1st Cir. 2013) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)).

C. Pretext

"Where a plaintiff makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious about granting the employer's motion for summary judgment." Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 116 (1st Cir. 2013) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998); citing Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1993) (internal quotation marks and alterations omitted). Still, "summary judgment may be appropriate even where elusive

11

concepts such as motive or intent are at issue." Kelley, 707 F.3d at 115 (quoting Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007); citing Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)) (internal quotation marks omitted). This is one of those cases in which summary judgment in favor of the defendant on the issue of pretext is appropriate.

"[T]here is no mechanical formula for finding pretext." Kelley, 707 F.3d at 116 (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003)).

> Instead, "[i]t is the type of inquiry where 'everything depends on the individual facts.'" [Che, 342 F.3d at] at 40 (quoting Thomas v. Eastman Kodak Co., 183 F.3d 38, 57 (1st Cir. 1999)). The inquiry focuses on whether the employer truly believed its stated reason for taking action adverse to the employee. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000).

Kelley, 707 F.3d at 116 (parallel citations omitted); see also Gray v. N.E. Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986) (explaining that "in assessing pretext . . . [the court's] focus must be on the perception of the decisionmaker, i.e., whether [the decisionmaker] perceived the plaintiff as violating . . . company policies and whether this perception was credible and reasonable").

No reasonable jury could conclude that Thompson did not reasonably believe that he terminated Dipigney because he brought a gun to work in violation of AutoZoners' company

12

policy.  Thompson received a complaint from a customer that Dipigney was carrying a gun in the Hooksett store.  Dipigney admitted to Haluga that he had done so.  The security provision of AutoZoners' Store Handbook and Code of Conduct, quoted above, may be reasonably construed as barring employees from bringing guns onto company property.

Dipigney devotes considerable attention to explaining why it was reasonable for him to believe that his possession of a gun on company property was permissible.  That Dipigney reasonably believed that company policy allowed him to carry his gun on company property does not preclude Thompson from having a reasonable belief that such conduct was prohibited.  The sine qua non of ambiguity is the ability of a single word, phrase, or sentence to support more than one reasonable interpretation, cf. United States v. Suarez-Gonzalez, 760 F.3d 96 (1st Cir. 2014); United States v. Okoye, 731 F.3d 46, 49 (1st Cir. 2013)), and Dipigney's principal criticism of AutoZoners' policy on weapons is its ambiguity.  In short, because no reasonable jury could conclude that Thompson did not believe the reason he gave for discharging Dipigney, AutoZoners is entitled to judgment as a matter of law on Dipigney's discrimination claims.

That said, the court turns, briefly, to Dipigney's three arguments against summary judgment.  First, he argues that

13

AutoZoners' inconsistent statements in discovery regarding who made the decision to discharge him are sufficient to render its explanation for his discharge unworthy of credence. To the contrary, AutoZoners has consistently maintained that Dipigney was discharged for carrying a gun on company property, in violation of company policy. The company's statements, during discovery, concerning who made the decision to discharge Dipigney have no bearing on the relevant inquiry and, furthermore, notwithstanding Dipigney's apparent contention that AutoZoners tried to hide Thompson's role as the ultimate decisionmaker, this order proceeds on the assumption that Thompson did make the decision to discharge Dipigney.

Second, Dipigney argues that pretext is established by the disparate treatment he received. "Disparate treatment may be 'competent proof that the explanation given for the challenged employment action was pretextual.'" Aly, 711 F.3d at 46 (quoting Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 43-44 (1st Cir. 2001)). But, as the court has already explained, Dipigney has identified no comparators who were "similarly situated . . . in all relevant respects," Aly, 711 F.3d at 46. Accordingly, his disparate-treatment argument fails.

Finally, Dipigney points to Thompson's comment about his accent in May of 2011 as a fact that precludes summary judgment

14

because a reasonable jury could find that to have been an expression of discriminatory animus.  Dipigney frames his argument this way:

> Given the evidence that District Manager Thompson illegally discriminated against Mr. Dipigney based on his accent, and the evidence . . . that District Manager Thompson made the ultimate decision to fire Mr. Dipigney, a rational jury could find that national origin discrimination motivated Mr. Dipigney's termination.

Pl.'s Mem. of Law (doc. no. 25-2) 12.  Dipigney relies upon Kelley for the proposition that "[o]ne well-established method of demonstrating pretext is 'to show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker," 707 F.3d at 117 (quoting Santiago-Ramos v. Cent'l P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000); citing Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 n.6 (1st Cir. 2000); Palasota v. Haggar Clothing Co., 342 F.3d 569, 578 (5th Cir. 2003).

In Kelley, a case involving a retaliation claim under the Americans with Disabilities Act, the decisionmaker made numerous comments and took numerous actions that "were consistently linked to [the plaintiff]'s disability and her need for accommodation," 707 F.3d at 116.  Those comments and actions, in turn, established retaliatory animus.  Here, by contrast, the decisionmaker made a single comment about Dipigney's accent

15

eleven months before Dipigney's discharge and made that comment in response to statements from customers that they had difficulty understanding Dipigney on the telephone. And, in the accent-animus case upon which Dipigney relies, the court ruled that discriminatory animus was demonstrated by a supervisor's harassment and negative treatment of the plaintiff coupled with her remark to the plaintiff that "people would be offended by his accent." Liberman v. Brady, 926 F. Supp. 1197, 1211 (E.D.N.Y. 1996). Here, by contrast, Thompson did not suggest that there was anything offensive about Dipigney's accent, only that some of AutoZoners' commercial customers had difficulty understanding it. Animus against unsuccessful telephone communications is hardly the same thing as animus against people from the West Indies. Under the circumstances of this case, no rational jury could find that Thompson's comment in May of 2011 demonstrated animus that was the basis for Dipigney's discharge. That conclusion is bolstered by the following additional undisputed facts: (1) after Thompson made his comment about Dipigney's accent, he received a promotion, two pay raises, and a positive performance review, notwithstanding Thompson's purported discriminatory animus; and (2) Thompson made his decision to discharge Dipigney after an investigation conducted by, and a recommendation for Dipigney's termination that came

16

from, Nick Haluga, to whom Dipigney ascribes no discriminatory animus.

## Conclusion

For the reasons described above, AutoZoners' motion for summary judgment, document no. 16 is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 2, 2014

cc:   Michael D. Billok, Esq.
      Nicholas F. Casolaro, Esq.
      John J. Kennedy, Esq.
      Benjamin T. King, Esq.
      Jason R.L. Major, Esq.
      Jennifer L. Parent, Esq.